UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CHRISTOPHER ALAN BERMAN,  CASE NO.:  3:16-cv-00384-BJD-JBT

    Plaintiff,

v.

LIBERTY MUTUAL INSURANCE COMPANY,
LIBERTY MUTUAL FIRE INSURANCE COMPANY,

    Defendants.
_____/

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON DECLARATORY ACTION AGAINST DEFENDANT, LIBERTY MUTUAL FIRE INSURANCE COMPANY**

    Comes now the Plaintiff, by and through his undersigned attorneys, and, pursuant to Fed.R.Civ.P. 56(a) moves this Court for entry of a summary final judgment on Plaintiff's claim for declaratory relief against Defendant, LIBERTY MUTUAL FIRE INSURANCE COMPANY, declaring that LIBERTY MUTUAL FIRE INSURANCE COMPANY, is contractually responsible for the payment of UM/UIM benefits to Plaintiff by virtue of their contract with the owner of a vehicle in which plaintiff was a passenger, when he was injured by the negligence of an underinsured driver. In support thereof, Plaintiff would show unto the Court as follows:

    1.    The pleadings, depositions, exhibits and other discovery in this case demonstrate that there are no genuine issues of material fact and that Plaintiff is entitled to summary judgment as a matter of law.  LIBERTY MUTUAL FIRE INSURANCE COMPANY has the burden of proving that a UM/UIM rejection

form was signed by their insured, ASBURY AUTOMOTIVE GROUP, INC. d/b/a COGGINS NISSAN OF ST. AUGUSTINE, prior to the accident at issue in this case. The undisputed evidence proves that ASBURY AUTOMOTIVE GROUP, INC. d/b/a COGGINS NISSAN OF ST. AUGUSTINE did not elect to waive or reduce their UM/UIM coverage before the crash and therefore the UM/UIM limits would be at the same level as the bodily injury limits under the contract. The undisputed facts are as follows:

### UNDISPUTED FACTS

1. This action arises out of a motor vehicle collision that occurred on March 5, 2011 in St. Augustine, St. Johns County, Florida, which the Plaintiff alleges caused or contributed to personal injury damages.

2. At the time of the crash the Plaintiff, CHRISTOPHER ALAN BERMAN, was an employee of ASBURY AUTOMOTIVE GROUP, INC. d/b/a COGGINS NISSAN OF ST. AUGUSTINE, the owner of a car dealership located in St. Augustine, Florida.

3. At that time and place, the at-fault driver, Sebastino Mangiafico, crashed his 2010 Ford F-150 pickup truck into the rear of a 2000 Nissan Altima owned by ASBURY AUTOMOTIVE GROUP, INC. d/b/a COGGINS NISSAN OF ST. AUGUSTINE.

4. At the time of the accident, ASBURY AUTOMOTIVE GROUP, INC. owned many car dealerships in many states, including dozens in Florida.

5. At the time of the collision Plaintiff, BERMAN, was a passenger in the 2000 Nissan Altima, which was insured by LIBERTY MUTUAL FIRE INSURANCE COMPANY.

6. Mr. Sebastino Mangiafico, the at fault driver, had bodily injury coverage through Allstate

2

with a limit of $50,000, Allstate tendered the full $50,000 limit to Plaintiff, BERMAN, to settle the claim.

7. At the time of the collision, the 2000 Nissan Altima, owned by ASBURY AUTOMOTIVE GROUP, INC. d/b/a COGGINS NISSAN OF ST. AUGUSTINE, in which Plaintiff, BERMAN was a passenger, was covered by a contract of insurance, with Defendant, LIBERTY MUTUAL FIRE INSURANCE COMPANY under policy number AV2-651-290229-021, which afforded general liability coverage for bodily injury damages incurred in connection with the operation of the vehicle in the amount of $2,000,000.00, for a period including the date of the collision. (Declarations page attached as Exhibit A).

8. The contract of insurance was required to provided UM/UIM Benefits, at the same limit written for the bodily injury coverage, pursuant to s. 627.727, Florida Statutes, unless an insured named in the policy made a written rejection of the coverage on behalf of all insureds under the policy.

9. Likewise, if no election is made, when more than one vehicle is written on the same policy, Florida law defaults to "stacking" the Uninsured Motorist limits on every covered vehicle.

10. The policy period for the contract of insurance, policy number AV2-651-290229-021, was from February 1, 2011 through February 1, 2012. (Copy of entire Policy attached as Exhibit B).

11. This was the initial policy year for coverage with LIBERTY MUTUAL FIRE INSURANCE COMPANY as the insurer of ASBURY AUTOMOTIVE GROUP, INC. d/b/a COGGINS NISSAN OF ST. AUGUSTINE, so there are no previous signed rejection

forms on file with LIBERTY MUTUAL FIRE INSURANCE COMPANY.

12. The uninsured and underinsured vehicle coverage required by 627.727 Fla. Stat. 2006, can only be rejected by a "knowing" policyholder who must sign and date a "Selection/Rejection" form approved by Florida's Office of Insurance Regulation.

13. The date of the crash involved in this case was March 5, 2011, within the effective dates of the subject policy.

14. Almost three weeks following the crash, on March 25, 2011 a UM rejection form was sent to Defendant, LIBERTY MUTUAL FIRE INSURANCE COMPANY, by ASBURY AUTOMOTIVE GROUP, INC. d/b/a COGGINS NISSAN OF ST. AUGUSTINE related to the policy in question.[1] (UM rejection form of March 25, 2011 attached as Exhibit C).

15. As held by the Florida Third District Court of Appeal in *Manchester Ins. & Indem. Co. v. Jones,* 317 So.2d 786, 787 (3rd DCA 1975):

> " The applicable statute, §627.727, Fla.Stat., specifically provides that an insured is covered with uninsured motorist protection unless such protection has been rejected. The record reflects that Jones made a deposit for automobile insurance on May 5, 1970; he was involved in an accident on May 14, 1970, and he allegedly signed a rejection of uninsured motorist coverage on May 22,1970, while in the hospital. In view of the fact that the rejection of uninsured motorist coverage was signed after the accident, it cannot be said that such rejection was effective at the time that Jones paid the deposit on the insurance policy or at the time of the accident."

16. Here, just as in *Manchester,* Liberty Mutual has failed to produce any evidence that the UM/UIM rejection occurred prior to the crash.  Plaintiff is entitled to summary judgment as a matter of law.

---

[1] The UM rejection form was actually not initialed as required and this fact was brought to the attention of the insured by the insurer on April 4, 2011. At some point in time after that date a properly initialed page was apparently completed by the insured.

MEMORANDUM OF LAW

A. Legal Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106 S.Ct.2505, 91 L.Ed.2d 202 (1986).

B. Florida Insurance Law

In a diversity case, Federal courts should apply the substantive law of the forum state unless federal constitutional or statutory law compels a contrary result. See Insurance Co. of N. Am. v. Lexow, 937 F.2d 569, 571 (11th Cir.1991). In the present case, the parties agree that Florida insurance law governs the issues before the Court.

Under Florida law, the interpretation of an insurance contract is a matter of law to be decided by the court. Volusia County Cattlemen's Association, Inc. v. Western World Insurance Company, 218 F.Supp.3d 1343 (M.D. Fla. 2016). Under Florida Statute §627.727, titled "Motor vehicle insurance; uninsured and underinsured vehicle coverage; insolvent insurer protection;". Subsection one of the UIM Statute states in pertinent part that UIM insurance may be rejected: "No motor vehicle liability insurance policy which provides bodily injury liability coverage shall be delivered or issued for delivery in this state with respect to any specifically insured or identified

5

motor vehicle registered or principally garaged in this state unless uninsured motor vehicle coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom. However, the coverage required under this section is not applicable when, or to the extent that, an insured named in the policy makes a written rejection of the coverage on behalf of all insureds under the policy." Fla. Stat. § 627.727(1).

Thus, in Florida, UIM coverage in an amount equal to the bodily injury policy limit is automatically included in primary insurance policies by operation of law unless such coverage is specifically rejected by the insured.

C. Florida's Public Policy

The Florida Supreme Court in Flores v. Allstate Ins. Co., 819 So.2d 740, 744-745 (Fla. 2002), discussed the Court's thoughts on the purpose of the UM/UIM statute and the necessity to avoid attempts to whittle away at its protections as follows:

> In Mullis v. State Farm Mutual Automobile Insurance Co., 252 So.2d 229, 237-38 (Fla.1971), we explained that "uninsured motorist coverage ... is statutorily intended to provide the reciprocal or mutual equivalent of automobile liability coverage prescribed by the Financial Responsibility Law." Further, as we elaborated in Allstate Insurance Co. v. Boynton, 486 So.2d 552, 557 (Fla.1986): The legislature wisely enacted a scheme whereby a motorist may obtain a limited form of insurance coverage for the uninsured motorist, by requiring that every insurer doing business in this state offer and make available to its automobile liability policyholders UM coverage in an amount equal to the policyholder's

6

automobile liability insurance. The policyholder pays an additional premium for such coverage. More recently, this Court again emphasized that the reason insurers are statutorily required to offer UM coverage to the insured is to protect individuals "who are injured or damaged by other motorists who in turn are not insured and cannot make whole the injured party. The statute is designed for the protection of injured persons, not for the benefit of insurance companies or motorists who cause damage to others." Young v. Progressive Southeastern Ins. Co., 753 So.2d 80, 83 (Fla.2000) (citing Brown v. Progressive Mut. Ins. Co., 249 So.2d 429, 430 (Fla.1971)). Regarding attempts by insurers to limit UM coverage, we explained in Salas v. Liberty Mutual Fire Insurance Co., 272 So.2d 1, 5 (Fla.1972), that the intention of the Legislature, as mirrored by the decisions of this Court, is plain to provide for the broad protection of the citizens of this State against uninsured motorists. As a creature of statute rather than a matter for contemplation of the parties in creating insurance policies, the uninsured motorist protection is not susceptible to the attempts of the insurer to limit or negate that protection. "Because the uninsured motorist statute was enacted to provide relief to innocent persons who are injured through the negligence of an uninsured motorist; it is not to be 'whittled away' by exclusions and exceptions." Young, 753 So.2d at 83.

D. Analysis

On January 31, 2011, Defendant Liberty issued and/or delivered to Defendant Asbury an insurance policy numbered AV2-651-290229-021, which afforded general liability coverage for bodily injury damages in connection with operation of a vehicle owned by Asbury in the amount of $2,000,000.00. Kathryn Cole, underwriter for Defendant Liberty, stated that February 1, 2011

would have been the effective date of coverage for the policy and that defendant Asbury did not submit the rejection form for uninsured/underinsured motorist coverage until, March 25, 2011, after the accident. (Deposition Kathryn Cole, page 32, lines 4-11; page 81, pages 16-25).

On March 5, 2011, Plaintiff, Christopher Berman, was an employee of Asbury. That morning, Plaintiff was acting in the scope of his employment while riding as a passenger in the vehicle owned by Asbury Automotive on U.S. 1 in St. Augustine, St. Johns County, Florida when a vehicle owned and driven by Sebastiano Mangiafico crashed into the rear of the Asbury vehicle. Mangiafico was an uninsured/underinsured motorist at the time of the accident. Subsequently, Plaintiff sought compensation for injuries under Asbury Automotive's policy with Defendant, Liberty.

On March 25, 2011, Defendant Asbury returned the coverage election forms, which was 53 days after the effective policy date of February 1, 2011. Therefore, the policy was in effect with the statutory default uninsured/underinsured motor insurance coverage according to Florida law. Florida law requires explicit rejection of uninsured/underinsured coverage. Fla. Stat. 627.727(1). This did not occur until after the subject crash. As held by the Florida Third District Court of Appeal in Manchester Ins. & Indem. Co. v. Jones, 317 So.2d 786, 787 (3rd DCA 1975):

> "The applicable statute, §627.727, Fla.Stat., specifically provides that an insured is covered with uninsured motorist protection unless such protection has been rejected. The record reflects that Jones made a deposit for automobile insurance on May 5, 1970; he was involved in an accident on May 14, 1970, and he allegedly signed a rejection of uninsured motorist coverage on May 22,1970, while in the hospital. In view of the fact that the rejection of uninsured motorist coverage was signed after the accident, it cannot be said that such rejection was effective at the

time that Jones paid the deposit on the insurance policy or at the time of the accident."

Here, just as in Manchester, the UM/UIM rejection occurred after the crash and therefore it was not effective.  Plaintiff is entitled to summary judgment as a matter of law. Therefore, the claim filed by Plaintiff Berman for injuries sustained in the accident on March 5, 2011 is covered by the statutory minimum uninsured/underinsured coverage which is not less than the $2,000,000 coverage as purchased by Asbury in its initial policy.

Wherefore, based upon the foregoing, Plaintiff moves this Court for its order granting summary final judgment in favor of Plaintiff on Plaintiff's action for declaratory relief, declaring that UM/UIM coverage exists under the LIBERTY MUTUAL FIRE INSURANCE COMPANY, policy to cover the damages Plaintiff suffered as a result of the negligence of the underinsured driver, and order an award to Plaintiff of his attorney's fees and costs.

Respectfully submitted,

**FINE, FARKASH & PARLAPIANO, P.A.**
Attorneys for Plaintiff, Christopher Alan Berman

BY:  /s/ *Jack J. Fine* _____
JACK J. FINE, ESQ.
Florida Bar Number:  223700
622 Northeast First Street
Gainesville, Florida 32601
Telephone: (352) 376-6046
Facsimile: (352) 372-0049
Primary email: jfine@ffplaw.com
Secondary email: jduchaj@ffplaw.com