UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

Case No. 3:16-cv-00384-BJD-JBT

CHRISTOPHER ALAN BERMAN,

    Plaintiff,

v.

LIBERTY MUTUAL INSURANCE COMPANY,
LIBERTY MUTUAL FIRE INSURANCE COMPANY,

    Defendants.

_____/

## DEFENDANT LIBERTY MUTUAL FIRE INSURANCE COMPANY'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND CROSS MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT

Defendant, Liberty Mutual Fire Insurance Company ("LMFIC"), by and through its undersigned counsel, files its Response in Opposition to Plaintiff's Motion for Summary Judgment (D.E. 44) and its Cross Motion for Summary Judgment. Plaintiff is not entitled to summary judgment. Instead, LMFIC is entitled to summary judgment as explained below.

### Procedural Posture

On October 27, 2017, LMFIC moved for an enlargement of time to respond to Plaintiff's Motion for Summary Judgment, reasoning that it was premature, because LMFIC was still in the process of conducting discovery that was relevant and directly countered Plaintiff's Motion for Summary Judgment.[1] (D.E. 47). Specifically, LMFIC described in its

---

[1] The discovery deadline at that time was November 15, 2017, pursuant to the Third Amended Case Management and Scheduling Order. (D.E. 39).

motion for enlargement of time that it was scheduling the deposition of the corporate representative of Asbury Automotive Group, Inc. d/b/a Coggin Honda of St. Augustine ("Asbury") to occur on November 10, 2017. (D.E. 47, ¶ 12). That deposition was scheduled, but then canceled, because LMFIC obtained a declaration from Asbury in support of LMFIC's position, a possibility that LMFIC noted in its motion for enlargement of time. (*Id.*). The Court granted LMFIC's motion for enlargement, giving LMFIC up to, and including, December 7, 2017 to file its written response in opposition to Plaintiff's Motion for Summary Judgment. (D.E. 54).

## **Defendant LMFIC's Response to Plaintiff's Undisputed Facts**

The first section of Plaintiff's Motion for Summary Judgment is entitled "Undisputed Facts" and LMFIC responds to each numbered paragraph as follows:

1. LMFIC admits that this action arises out of a motor vehicle collision that occurred on March 5, 2011 in St. Augustine, St. Johns County, Florida, which the Plaintiff alleges caused or contributed to personal injury damages.

2. LFMIC admits that, at the time of the crash the Plaintiff, Christopher Alan Berman ("Plaintiff" or "Berman"), was an employee of Asbury,[2] the owner of a car dealership located in St. Augustine, Florida.

3. LMFIC admits that, at that time and place, the at-fault driver Sabastiano Mangiafico[3] crashed his 2010 Ford F-150 pickup truck into the rear of a Nissan Altima[4] owned by Asbury.[5]

---

[2] The dealership's fictitious name is Coggin Honda of St. Augustine, not "Coggins Nissan of St. Augustine" as stated by Plaintiff. *See* Exhibit 1, Declaration of Brad Reese, at ¶ 2.

Case 3:16-cv-00384-BJD-JBT   Document 59   Filed 12/07/17   Page 3 of 20 PageID 1182

4.     LMFIC admits that, at the time of the accident, Asbury owned many car dealerships in many states, including dozens in Florida.

5.     LMFIC admits that, at the time of the collision, Plaintiff was a passenger in a Nissan Altima,[6] which was a covered auto under the Garage policy, no. AV2-651-290229-021, issued by LMFIC to Asbury (the "Policy").

6.     LMFIC admits, based upon Plaintiff's representations, that Mr. Sebastiano Mangiafico,[7] the at-fault driver, had bodily injury coverage through Allstate with a limit of $50,000, and Allstate tendered the full $50,000 limit to Plaintiff to settle the claim.

7.     LFMIC admits that, at the time of the collision, the Nissan Altima,[8] owned by Asbury,[9] in which Berman was a passenger, was a covered auto under the Policy, which, subject to its terms, conditions, limitations, and exclusions, afforded auto liability coverage for damages because of "bodily injury" caused by an "accident" and resulting from "garage operations," involving the ownership, maintenance, or use of covered "autos," with a limit of liability of $2,000,000.00. The Policy was in effect from Feb. 1, 2011 through Feb. 1, 2012, which includes the date of the collision.

---

[3] It appears that Plaintiff may have misspelled the at-fault driver's name as "Sabastino Magnaifico."

[4] The police report states that it was a 2000 Nissan Altima; however, the Carfax report and the repair records from Asbury state that it was a 2008 Nissan Altima. The model year of the Nissan Altima is irrelevant for purposes of the parties' respective briefs on the UM/UIM coverage issue.

[5] *See* footnote 2, *supra*.

[6] *See* footnote 4, *supra*.

[7] *See* footnote 3, *supra*.

[8] *See* footnote 4, *supra*.

[9] *See* footnote 2, *supra*.

8. LMFIC denies that the Policy was required to provide Florida UM/UIM benefits at the same level as the auto liability coverage limit, pursuant to 627.727, Florida Statutes, because Asbury, as named insured, made a knowing and informed rejection of UM/UIM coverage, on behalf of all insureds, before the Policy's effective date.

9. LMFIC denies that the Policy provides "stacking" UM coverage for every covered auto.

10. LMFIC admits that the effective period for the Policy was from February 1, 2011 through February 1, 2012.

11. LMFIC admits that the Policy was the initial one issued by LMFIC as to Asbury, so there are no previous signed rejection forms on file with LMFIC.

12. LMFIC denies that UM/UIM coverage required by 627.727, Fla. Stat., can only be rejected by a "knowing" policyholder, who must sign and date a "Selection/Rejection" form approved by Florida's Office of Insurance Regulation. Plaintiff's paragraph 12 is not a statement of undisputed fact, but rather a statement of law, and it is an incorrect statement of law. A policyholder may reject UM/UIM coverage, even if the "Selection/Rejection" form was not approved by Florida's Office of Insurance Regulation, but the insurer will not have a "conclusive presumption," according to section 627.727(1) of the Florida Statutes. *See, e.g., Bethel v. Reliance Ins. Co.*, 590 So.2d 1003 (Fla. 3d DCA 1991) (a knowing rejection of UM coverage may be shown through the testimony of an employer's business agent and by the insurance application form). Also LMFIC is not sure why Plaintiff cites to the 2006 version of the statute when the UM rejection form at issue was signed in 2011. Lastly, this statement is irrelevant, because Plaintiff has never previously

4

contended—and does not appear to do so here—that the UM rejection form that Asbury signed was not approved by Florida's Office of Insurance Regulation.

13.    LMFIC admits that the date of the crash involved in this case was March 5, 2011, within the effective dates of the Policy.

14.    LMFIC admits that, almost three weeks following the crash, on March 25, 2011, Asbury sent a Florida UM rejection form to LMFIC in connection with the Policy.[10]

15.    LMFIC denies Plaintiff's block quotation from *Manchester Ins. & Indem. Co. v. Jones*, 317 So.2d 786, 787 (Fla. 3d DCA 1975), because Plaintiff's Paragraph 15 is not a statement of undisputed fact. LMFIC also denies that the holding in *Manchester* applies in this case.

16.    LMFIC denies that, like the insurer in *Manchester*, it failed to produce any evidence that the UM/UIM rejection occurred prior to the crash. LMFIC also denies that Plaintiff is entitled to summary judgment as a matter of law.

---

[10] Plaintiff states in footnote 1 of his Motion for Summary Judgment that the UM rejection form was actually not initialed. This fact is not dispositive on the issue of Asbury's rejection of UM/UIM coverage, because a policyholder may reject UM/UIM coverage, even if the "Selection/Rejection" form was not approved by Florida's Office of Insurance Regulation. *See, e.g., Bethel v. Reliance Ins. Co.*, 590 So.2d 1003 (Fla. 3d DCA 1991) (a knowing rejection of UM coverage may be shown through the testimony of an employer's business agent and by the insurance application form). Here, the evidence shows that Asbury made a knowing and informed rejection of UM/UIM coverage before the Policy's effective date.

**Defendant LMFIC's Response in Opposition to Plaintiff's Memorandum of Law**

I.   **Argument**

   A.   **Summary**

Plaintiff is not entitled to summary judgment, as a matter of law, based upon the pleadings, depositions, exhibits, and other discovery in this case. Instead, the evidence shows that LMFIC is entitled to summary judgment, as a matter of law, the effect of which is that the Policy does not provide Florida UM/UIM coverage to Plaintiff for this accident.

Plaintiff's Motion for Summary Judgment must be denied for two glaring reasons. First, Plaintiff's premise that an insured can reject Florida UM/UIM coverage only by signing an approved UM/UIM rejection form is incorrect. Under Florida law, an insurer can prove a knowing and informed rejection of UM/UIM coverage, even if the insured did not sign a UM rejection form. Therefore, Plaintiff's reliance on *Manchester Insurance & Indemnity Co. v. Jones*, 317 So.2d 786, 787 (Fla. 3d DCA 1975) is misguided. *Manchester* does not hold that a UM rejection form signed after an accident will always be invalid. Second, Plaintiff does not argue or articulate that the evidence shows that the named insured did not make a knowing and informed rejection of UM/UIM coverage. The evidence actually shows that the named insured made a knowing and informed rejection of UM/UIM coverage before the Policy's effective date.

   B.   **Florida law governs the UM/UIM coverage issue in this case.**

LMFIC agrees with Plaintiff that Florida law governs for purposes of UM/UIM coverage at issue in this case. The parties also agree that, under Florida law, the interpretation of an insurance contact is a matter of law to be decided by the court. *Volusia*

*County Cattlemen's Ass'n, Inc. v. Western World Ins. Co.*, 218 F.Supp.3d 1343 (M.D. Fla. 2016).

    **C.    An insured can make a knowing and informed rejection of UM/UIM coverage, even in the absence of a signed approved UM rejection form.**

Plaintiff's premise that an insured can reject UM/UIM coverage only by signing an approved UM/UIM rejection form is incorrect. The case of *Manchester Insurance & Indemnity Co. v. Jones*, 317 So.2d 786, 787 (Fla. 3d DCA 1975), upon which Plaintiff relies exclusively, provides no guidance in this case, because it has nothing to do with the Florida UM statute in effect at the time of the accident, and it concerned an unusual set of facts.[11] In *Manchester*, the evidence was disputed that the insured made a knowing[12] rejection of UM/UIM coverage, because he was still in the hospital recovering from his injuries when he signed the UM rejection form. The insurer, Manchester, asserted that it was the insured's intent from the beginning to reject UM coverage, as reflected in his signed UM rejection form. The court disagreed with the insurer, because the jury believed the insured, who said he did not understand what he was signing. *Id.* at 787. The court found that the insured presented sufficient evidence for the jury to find in his favor. *Id.*

---

[11] *Manchester* was decided before the Florida Legislature amended the UM statute in 1984 that added the approved form and conclusive presumption language to written rejections under subsection (1). *See Liberty Mut. Ins. Co. Inc. v. Ledford*, 691 So.2d 1164, 1166 (Fla. 2d DCA 1997). The 1984 amendment attempted to ease the burden placed on insurance companies to prove a knowing rejection of UM coverage. *Id.*

[12] In the 1970s, the UM statute required an insurance carrier to issue an auto policy containing UM coverage, unless "any insured named in the policy shall reject the coverage." § 627.727(1), Fla. Stat. (1975-1979). The courts interpreted this statutory provision to require a "knowing" rejection. *Kimbrell v. Great Am. Ins. Co.*, 420 So.2d 1086 (Fla. 1982). A written document was not statutorily required to establish a knowing rejection, and the legal issue usually created a question of fact for jury determination. *Id.*

Evidently, in *Manchester*, the only evidence presented by the insurer of the insured's intent to reject Florida UM coverage was a rejection form signed by the insured in the hospital, post-accident. Because the insured testified that he did not know what he was signing while hospitalized, the court concluded that there was no knowing rejection of Florida UM coverage. Consequently, the court did not need to address the propriety of the manner and timing of the rejection. Here, in contrast, the evidence is undisputed that Asbury, as named insured, made a knowing and informed rejection of Florida UM/UIM coverage before the Policy's effective date, which is established through a paper trail between the parties to the contract, LMFIC and Asbury, and the testimony of Asbury's agents.[13]

Unlike the insured in *Manchester*, Asbury is a large, sophisticated, and national company, which operates car dealerships throughout the United States.[14] Asbury is well-versed in the types of insurance coverage to procure and the purposes of each.[15] Since 2002, Asbury has staffed a sophisticated risk management department, whose job it is to understand and obtain the appropriate insurance based for the needs of the business.[16] Put simply, Asbury knew it was rejecting, and intended to reject, Florida UM/UIM coverage.

Asbury, the named insured under the Policy, agrees that it rejected UM/UIM coverage. Asbury made an informed and knowing rejection of UM/UIM coverage *before* the

---

[13] *See* Exhibit 1; *see also* Exhibit 2, Declaration of Kathryn Cole.

[14] *See* Exhibit 1, ¶ 2.

[15] *See* Exhibit 1, ¶ 4.

[16] *See* Exhibit 1, ¶ 4.

Policy was issued.[17] Asbury understood that UM coverage provides compensation to an insured for bodily injury or wrongful death damages inflicted by the negligence of an uninsured motorist.[18] Asbury also understood that UIM coverage provides the same protection when there is a deficiency in the at-fault driver's liability coverage.[19] Asbury appreciated that the purpose of UM/UIM coverage is to allow the insured the opportunity to purchase the same limits that would have been available had the negligent driver obtained liability limits equal to that of the insured.[20] Asbury, however, made a business decision to reject UM/UIM coverage in states like Florida where it could reject such coverage. Asbury never intended to purchase UM/UIM coverage in Florida or any other state where coverage could be rejected, nor did Asbury ever communicate any such intent to LMFIC.[21]

Because of the very different facts in *Manchester*, its holding has no application here. Moreover, as noted above, *Manchester* does not hold that a UM rejection form signed after an accident is invalid as a matter of law. It only upheld a jury verdict on whether the insured "knowingly" rejected UM coverage when he signed the rejection form in the hospital after an auto accident.

Plaintiff does not cite to any other cases for the proposition that a UM rejection form signed after a policy's inception (or an accident) is invalid as a matter of law. There are no such cases.

---

[17] *See* Exhibit 1, ¶ 9.

[18] *See id.*

[19] *See id.*

[20] *See id.*

[21] See Exhibit 1, ¶ 5.

9

Instead, under Florida law, an insured may reject UM/UIM coverage orally or in a different fashion, other than by signing an approved written form.[22] *See, e.g., Union Am. Ins. Co. v. Cabrera*, 721 So.2d 313, 314 (Fla. 2d DCA 1998); *Chmieloski v. National Union Fire Ins. Co. of Pittsburg, Pa.*, 563 So.2d 164, 166 (Fla. 2d DCA 1990); *Quirk v. Anthony*, 563 So.2d 710, 715 (Fla. 2d DCA 1990); *Liberty Mut. Ins. Co. v. Ledford*, 691 So.2d 1164, 1166 n. 3 (Fla. 2d DCA 1997). The practical distinction between a rejection based upon a written form and some other method is the burden of proof. A written rejection is *prima facie* evidence of a rejection (*i.e.*, a conclusive presumption). § 627.727(1), FLA. STAT. (2011); *see also Lewis v. Liberty Mut. Fire Ins. Co.*, 789 F.Supp.2d 1289, 1293 (S.D. Fla. 2011). In the absence of a written rejection, the burden shifts to the insurance carrier to establish that the insured otherwise made a knowing rejection of UM coverage. *See Chmieloski*, 563 So.2d at 166; *Quirk*, 563 So.2d at 715; *Ledford*, 691 So.2d at 1166 n.3. If the carrier satisfies its burden of proof of an alternative means of rejection, then that rejection is binding, and the insured will not be entitled to UM coverage. *Id.*

*Chmieloski* provides useful guidance. There, the court held that an employee was entitled to UM coverage in an amount equal to limit for bodily injury liability under the policy, *unless* the insurer could establish that the insured waived its right to a written rejection of coverage by making an oral, knowing rejection of UM coverage. 563 So.2d at 165. An insurer can avoid statutorily required UM coverage equal to the limit of bodily injury coverage if it proves the named insured orally waived UM coverage by knowingly

---

[22] A signed approved UM rejection form dated before the accident is ideal, but not necessary for a finding on summary judgment that the insured made a knowing, informed rejection of UM/UIM coverage.

selecting a lower limit or by knowingly rejecting the coverage outright. *Id.* at 166. However, that requires proof of oral rejection before delivery of policy, not proof of what the named insured would have decided if coverage had been offered. *Id.* The affidavit of the insured's employee failed to establish an oral, knowing rejection of statutory coverage before the policy's delivery. *Id*. at 167. Unlike the affidavit in *Chmieloski*, the Declaration of Brad Reese, on behalf Asbury, establishes that Asbury made an informed and knowing rejection of UM/UIM coverage *before* delivery of the Policy and it is memorialized in writing.[23] No evidence exists to the contrary. The "Sold" documents that preceded the Policy's effective date corroborate Asbury's testimony,[24] which is explained in more detail below.

*Quirk* also supports the premise that an insured can make a knowing and informed rejection of UM/UIM coverage in the absence of signing an approved UM rejection form. In *Quirk*, the court held that class II insureds[25] are entitled to challenge an insurer's failure to obtain a written rejection. 563 So.2d at 714. This does not mean, however, that the class II insured automatically receives UM coverage in the absence of a written rejection by the named insured. *Id*. at 715. An insured can waive rights, which it receives by regulation or statute. *Id.* (citing *Del Prado v. Liberty Mut. Ins. Co.*, 400 So.2d 115 (Fla. 4th DCA 1981)). Once a class II insured establishes that no written rejection exists, the burden of proof shifts to the insurer to prove the named insured, who waived the right to reject UM coverage in

---

[23] *See* Exhibit 1.

[24] *See* Exhibit 2, ¶ 11.

[25] Class II insureds are lawful occupants of the insured vehicle, who are not named insureds or resident relatives of named insureds. They are essentially third-party beneficiaries to a named insured's policy. *See Travelers Ins. Co. v. Warren*, 678 So.2d 324, 326 (Fla. 1996). Plaintiff is a class II insured.

writing, effectuated a knowing rejection by other means. *Id*. The insurer must prove the named insured made the knowing rejection of UM coverage before the policy was delivered. *Id*. Again, Mr. Reese's Declaration establishes that Asbury made a knowing and informed rejection of UM/UIM coverage before the effective date of the Policy, together with the corroborating "Sold" documents, dated January 31, 2011, from LMFIC's underwriting file.[26]

The *Ledford* decision also supports that an insurer may prove a rejection of UM coverage through an oral waiver by the named insured. It involved a severely injured class II insured. The parents of the injured insured had standing to raise the absence of a UM rejection. The insurer was entitled to prove a rejection of UM coverage or a selection of lower UM limits through an oral waiver by the named insured. The court determined that, even if an insurer fails to secure the statutorily required written rejection/selection form, thus depriving it of the benefit of the conclusive presumption, a class II insured is not automatically entitled to UM coverage. 691 So.2d at 1166, fn. 3. The insurer must prove the named insured orally waived the statute's written rejection requirement, and the insurer's proof must consist of an oral rejection before the delivery of the policy. *Id*. (citing *Chmieloski*).

Ultimately, the *Ledford* decision reversed the trial court's judgment. A jury rendered a verdict in favor of the insured and found no valid rejection of UM coverage or selection of lower limits. However, the trial court's refusal to admit the form selecting lower UM limits was reversible error. This decision interpreted the 1991 version of the UM statute. The court's broad comments, relating to UM rejection, are *dicta*, because the case did not involve

---

[26] *See* Exhibits 1 & 2.

a complete rejection of UM. Rather, the critical material fact was whether the insurer obtained a valid election of UM coverage in an amount less than the bodily injury liability limits provided for in the policy. *Id.* at 1165.

>   **D.    Kathryn Cole testified that the underwriting file materials show that Asbury rejected Florida UM/UIM coverage before the Policy's effective date.**

Kathryn Cole's testimony establishes that Asbury made a knowing and informed rejection of Florida UM/UIM coverage before the Policy's effective date. In his Motion for Summary Judgment, Plaintiff refers to only part of Ms. Cole's deposition transcript, as support for the undisputed fact that Asbury signed the UM rejection form after the accident. The entirety of Ms. Cole's testimony, however, establishes that Florida UM/UIM coverage was rejected before the accident and before the Policy's effective date. For instance, Ms. Cole testified in her deposition that the Policy was quoted in accordance with Asbury's intention to reject Florida UM/UIM coverage and that is how the Policy was sold.[27]

The attached Declaration of Ms. Cole further explains that the "Sold" documents were circulated and accepted by Asbury on January 31, 2011, reflecting that Asbury rejected UM/UIM coverage in states like Florida where it could reject such coverage.[28] Therefore, Asbury's rejection of Florida UM/UIM coverage occurred before the Policy's effective date of February 1, 2011. Ms. Cole's testimony corroborates Asbury's testimony that Asbury made a knowing and informed rejection of Florida UM/UIM coverage before the Policy's effective date.

---

[27] D.E. 46-5, p. 35, l. 2-6; P. 36, l. 3-21; p. 43, 1. 11-13.

[28] *See* Exhibit 2, ¶ 11. Ms. Cole also authenticated the emails and other materials attached to her Declaration as business records.

### E. Asbury made an informed and knowing rejection UM/UIM coverage before the Policy's effective date.

The position of the only two parties to the insurance contract, LMFIC and Asbury, is that no UM/UIM coverage exists under the Policy. Asbury made an informed and knowing rejection of UM/UIM coverage before the Policy's effective date, according to the unequivocal testimony of Mr. Reese in his attached Declaration.[29] Asbury states that its former risk manager, Charles Couget, Jr., received a January 31, 2011 email and attachments from Asbury's insurance broker, Marsh USA, Inc. ("Marsh"), consisting of documents marked as "Sold," which, according to the email, served as an order to bind the Policy.[30] The "Sold" documents, dated January 31, 2011, show that Florida UM/UIM coverage was rejected before the effective date of the Policy.[31]

The Policy's lack of Florida UM/UIM coverage was consistent with what Asbury desired, which was to reject UM/UIM coverage in those states where it could, before the Policy's issuance.[32] It was Asbury's practice at the time to review the Policy to ensure it reflected what Asbury wanted, and the fact that Asbury did not seek to correct the Policy after receiving the "Sold" documents in the January 31, 2011 email establishes that the Policy was issued in accordance with Asbury's intent.[33]

---

[29] *See* Exhibit 1, ¶ 9.

[30] *See* Exhibit 1, ¶ 6.

[31] *See id.*

[32] *See* Exhibit 1, ¶ 7.

[33] *See id*.

    **F.**    **The evidence shows that Asbury made a knowing and informed rejection of UM/UIM coverage before the Policy's effective date.**

The evidence is undisputed that Asbury made a knowing and informed rejection of UM/UIM coverage before the Policy's effective date. Plaintiff does not argue or articulate that Asbury did not make knowing and informed rejection. Instead, Plaintiff argues only that, because Asbury signed the UM rejection form after the accident, the rejection is invalid. The law and evidence do not support Plaintiff's position.

**II.**    **Conclusion**

LMFIC has satisfied its burden of proof by showing that its insured made a knowing, informed rejection of Florida UM/UIM coverage before the Policy's effective date. Accordingly, Plaintiff is not entitled to UM/UIM coverage benefits and, consequently, Plaintiff's Motion for Summary Judgment must be denied.

## DEFENDANT LIBERTY MUTUAL FIRE INSURANCE COMPANY'S CROSS MOTION FOR SUMMARY JUDGMENT

LMFIC, by and through its undersigned counsel and pursuant to Federal Rule of Civil Procedure 56 and Local Rule 3.01, cross moves for summary judgment as follows:

    1.    Plaintiff's Motion for Summary Judgment must be denied, because it fails to provide competent summary judgment evidence to establish the undisputed material facts necessary to support the motion.

    2.    Moreover, the facts established by LMFIC's summary judgment evidence not only must result in the denial of summary judgment to Plaintiff, but also the granting of summary judgment to LMFIC.

**Statement of Undisputed Material Facts[34]**

1. Asbury made an informed and knowing rejection of UM/UIM coverage before the Policy's effective date, which was February 1, 2011.[35]

2. Asbury acknowledges that its former risk manager, Charles Couget, Jr., received a January 31, 2011 email and attachments from Asbury's insurance broker, Marsh USA, Inc., consisting of documents marked as "Sold," which, according to the email, served as an order to bind the Policy.[36]

3. The "Sold" documents, dated January 31, 2011, show that Florida UM/UIM coverage was rejected before the effective date of the Policy.[37]

4. The "Sold" documents pre-dated the Policy's effective date and show that the Policy provides UM/UIM coverage in the amounts of "Rejected/Statutory Minimum." "Rejected" means Asbury did not purchase UM/UIM coverage in states where it could reject UM/UIM coverage, and the phrase "statutory minimum" means that it purchased UM/UIM coverage only in those states in which it is required by statute and for the minimum amounts mandated by law. This means that Asbury rejected UM/UIM coverage in states, like Florida, where it could, and purchased minimum UM/UIM coverage in states, like Virginia, where required, prior to the issuance of the Policy.[38]

---

[34] LMFIC adopts Plaintiff's "Undisputed Facts" that LMFIC has admitted (see above).

[35] *See* Exhibit 1, ¶ 9.

[36] *See* Exhibit 1, ¶ 6.

[37] *See id.; see also* Exhibit 2, ¶ 12.

[38] *See* Exhibit 2, ¶ 13.

5. LMFIC quoted the Policy in accordance with Asbury's intention to reject Florida UM/UIM coverage and that is how LMFIC sold the Policy to Asbury.[39] Indeed, the pricing of the Policy was done with the understanding and knowledge of Asbury's rejection of UM/UIM coverage in states, like Florida, where it was allowed and Asbury's selection of minimal UM/UIM coverage in states, like Virginia, where minimum amounts were required.[40]

6. As of the date of inception, the Policy's Declarations provided $2 million in auto liability limits for "each accident." With respect to UM/UIM coverage, however, the limits were different than the bodily injury limits, as the Policy declarations refer to a separate "State Schedule of Limits" for UM/UIM coverage. The "Uninsured/Underinsured Motorist Insurance (UM/UIM) Schedule," which was made a part of the Policy as of its inception, listed only four states for which UM/UIM coverage was provided, none of which is Florida.[41]

## MEMORANDUM OF LAW IN SUPPORT OF LMFIC'S CROSS MOTION FOR SUMMARY JUDGMENT

The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion. *See Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005). "Cross-motions for summary judgment will not, in themselves, warrant the court grating summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United*

---

[39] *See* Exhibit 2, ¶14.

[40] *See id.*

[41] *See* Exhibit 2, ¶10.

*States v. Oakley*, 744 F.2d 1552, 1555 (11th Cir. 1984).  Thus, a court must consider each motion on its merits, resolving all reasonable inferences against the party whose motion is under consideration.  *See Am. Bankers Ins. Grp.*, 408 F.3d at 1331.

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there are no genuine issues as to any material facts and that the moving party is entitled to judgment, as a matter of law.  FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no genuine issue of material fact."  *Chartis Property & Casualty Co. v. Jassy*, Case No. 8:12-cv-20870-T-30MAP, 2013 WL 5921541, *2 (M.D. Fla. Nov. 4, 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).  The substantive law applicable to the claimed causes of action will identify the material facts.  *Id.*  Throughout this analysis, the court must examine the evidence in light most favorable to the non-movant and draw all justifiable interferences in its favor.  *Id.*

Under Florida law, an insurer may prove a rejection of UM coverage, even in the absence of a signed UM rejection form.  *See Chmieloski*, 563 So.2d at 166; *Quirk v. Anthony*, 563 So.2d at 715; *Ledford*, 691 So.2d at 1166 n. 3.  The undisputed evidence in this case shows that Asbury made a knowing and informed rejection of UM/UIM coverage before the Policy's effective date.  LMFIC adopts and incorporates its argument from its Response in Opposition to Plaintiff's Motion for Summary Judgment (above) in support of LMFIC's Cross Motion for Summary Judgment.

The undisputed evidence shows, as a matter of law, that LMFIC is entitled to summary judgment, and, therefore, Plaintiff is not entitled to UM/UIM coverage for the accident.

## **Conclusion**

WHEREFORE, LMFIC requests that this Court grant its Cross Motion for Summary Judgment and deny Plaintiff's Motion for Summary Judgment, so that Plaintiff is not entitled to UM/UIM coverage for the March 5, 2011 accident.

/s/ Ryan K. Hilton
J. PABLO CÁCERES, ESQ.
Florida Bar No.: 131229
pcaceres@butler.legal
RYAN K. HILTON, ESQ.
Florida Bar No.: 304610
Butler Weihmuller Katz Craig LLP
Attorneys for Defendant Liberty Mutual Fire Insurance Company
Butler Weihmuller Katz Craig LLP
400 N. Ashley Dr., Ste 2300
Tampa, FL 33602
Phone: 813-281-1900
Fax: 813-281-0900
Email: pcaceres@butler.legal
rhilton@butler.legal

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 7, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.

/s/ Ryan K. Hilton
RYAN K. HILTON, ESQ.
Florida Bar No.: 304610
Attorney for Defendant Liberty Mutual Fire Insurance Company
Butler Weihmuller Katz Craig LLP
400 N. Ashley Dr., Ste. 2300
Tampa, FL 33602
Phone: 813-281-1900
Fax: 813-281-0900
Email: rhilton@butler.legal