UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CHRISTOPHER ALAN BERMAN,

Plaintiff,

v. Case No. 3:16-cv-384-J-39JBT

LIBERTY MUTUAL INSURANCE COMPANY and LIBERTY MUTUAL FIRE INSURANCE COMPANY,

Defendants.
_______________________________/

# ORDER

**THIS CAUSE** is before the Court on Plaintiff's Motion for Summary Judgment on Declaratory Action (Doc. 44); Defendant's Response in Opposition and Cross Motion for Summary Judgment (Doc. 59; Cross Motion)[1]; and Plaintiff's Response in Opposition to Defendant's Cross Motion (Doc. 60).[2] Plaintiff brings this action against Defendants for underinsured motorist ("UM") benefits following a car accident. (Doc. 2; Complaint ¶¶1-2).

The party seeking summary judgment bears the initial burden of demonstrating to the Court, by reference to the record, that there are no genuine issues of material fact to be determined at trial. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). "When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to

---

[1] Only Defendant Liberty Mutual Fire Insurance responded to Plaintiff's Motion for Summary Judgment.

[2] The Court also considered the parties' supplemental briefing (Docs. 69 and 73).

interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (internal citations and quotation marks omitted). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)).

Most of the facts surrounding the accident and Plaintiff's subsequent claim for coverage are undisputed for purposes of these motions. Plaintiff worked for Asbury Automotive Group, Inc. ("Asbury"), a local car dealership. Stip. ¶ 2. On March 5, 2011, Plaintiff was a passenger in a Nissan Altima owned by Asbury when he was rear-ended by the at-fault driver. Id. ¶ 3.[3] At the time of the accident, Plaintiff was covered by an auto liability insurance policy identified as AV2-651-290229-021 (the "Policy") with a coverage limit of up to $2,000,000.00 for bodily injury, while the at-fault driver's policy had a coverage limit of $50,000.00. Id. ¶¶ 5-7. Defendant issued the Policy to Asbury.[4] Id. ¶ 5.

[3] The paragraph numbers correspond to both Plaintiff's Motion for Summary Judgment on Declaratory Action (Doc. 44) and Defendant's Response in Opposition and Cross Motion for Summary Judgment (Doc. 59) and will be identified by the designation Stipulation.

[4] This is no dispute that Plaintiff has standing because he was a lawful occupant of the insured vehicle and was therefore a "class II" insured whose rights essentially

The Policy was originally attached in a string of emails that passed from Defendant to Marsh USA, Inc. ("Marsh"), who was an insurance broker for Asbury. (Doc. 59.1 ¶ 6). Marsh accepted the Policy on behalf of Asbury and Asbury contends that the Policy was never intended to provide UM coverage. Id. ¶ 9. Both Asbury and Defendant cite to the Policy under the "Garage Liability" section, which provides that UM coverage is "Rejected/Statutory Minimum[.]" (Doc. 59.1 at 33).[5] On March 25, 2011, Asbury, for the first time, sent Defendant a Florida UM insurance rejection form. Stip. ¶¶ 11 and 14. The parties both move for summary judgment. Plaintiff claims that the undisputed facts show that Asbury did not reject UM coverage prior to the accident. Defendant claims that the undisputed facts show that Asbury never had UM coverage. Both parties agree that it is Asbury's rejection of UM coverage vel non that that controls the outcome of this case.

Plaintiff's argument is that Defendants provided personal injury protection insurance which, by operation of Florida statutes, means that Defendants provided an equal amount of uninsured motorist insurance absent express written rejection. (Doc. 44 at 5-6). Plaintiff contends that Asbury's written rejection occurred after the accident and therefore UM coverage was in place at the time of Plaintiff's accident. Defendant and

---

derived from those of Asbury, the named insured. See Travelers Ins. Co. v. Warren, 678 So. 2d 324, 326 (Fla. 1996).

[5] Defendant also references a schedule of coverage which directs the reader to "see state schedule of limits for uninsured motorists insurance." (Doc. 59.1 at 6). The state schedule of limits provides that "[i]f UM coverage is afforded in . . . FL . . . UIM [underinsured motorist coverage] coverage is included." For purposes of this case, the distinction between UM and UIM coverage is not material and the Court refers only to UM coverage.

Asbury claim that Asbury is a sophisticated purchaser of insurance and that the "paper trail" and testimony of Asbury and Defendant's agents establish that Asbury never intended to obtain UM coverage. (Doc. 59 at 8-9). Despite the lack of a timely written rejection on an approved form, Defendant argues that Florida case law allows for an insured to waive UM coverage orally or in "other" ways. Id. at 10.

Florida Statutes section 627.727(1) requires insurance policies providing bodily injury coverage to also provide UM coverage unless "an insured named in the policy makes a written rejection of the coverage on behalf of all insureds under the policy." Section 627.727(1) also reads that "[t]he rejection or selection of lower limits [of UM coverage] shall be made on a form approved by the office." Yet, there are a string of Florida cases that conclude an insured can waive its right to UM coverage orally or without using the approved form. See e.g., Del Prado v. Liberty Mut. Ins. Co., 400 So. 2d 115, 116 (Fla. 4th DCA 1981) (holding that "the named insured can waive this [written rejection] requirement which was designed for its protection. Statutory rights can be waived"); Quirk v. Anthony, 563 So. 2d 710, 715 (Fla. 2d DCA 1990), approved and remanded sub nom. Travelers Ins. Co. v. Quirk, 583 So. 2d 1026 (Fla. 1991) (relying on Del Prado for its holding that an insurer can show a waiver of the statutory requirement that UM coverage be made in writing); Chmieloski v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania, 563 So. 2d 164, 166 (Fla. 2d DCA 1990) (relying on Quirk to allow an insurer to show oral waiver of statutory rights to written waiver); Union Am. Ins. Co. v. Cabrera, 721 So. 2d 313, 314 (Fla. 2d DCA 1998) (reaffirming Chmieloski); Belmont v. Allstate Ins. Co., 721 So. 2d 436, 438 (Fla. 5th 1998) (following Chmieloski in dicta). At least two federal district court in Florida agreed with this line of cases that

an insured can orally waive UM coverage. Richard v. GEICO Gen. Ins. Co., No. 4:16CV184-MW/CAS, 2017 WL 5953298, at *2 (N.D. Fla. Jan. 30, 2017) (relying on Cabrera); Popson v. 21st Century Centennial Ins. Co., No. 8:14-CV-1788-MSS-MAP, 2015 WL 12838360, at *7 (M.D. Fla. Dec. 7, 2015).

Significantly, this line of cases all lead back to Del Prado, which was issued in June of 1981 and considered a 1971 version of section 627.727(1) along with an insurance department bulletin. See Del Prado, 400 So. 2d at 116. Section 627.727(1) "was amended, effective October 1, 1982, to require that the rejection of UM/UIM coverage specified in the statute be *in writing*." Adams v. Aetna Cas. & Sur. Co., 574 So. 2d 1142, 1146 (Fla. 1st DCA 1991) (emphasis in original). None of the cases cited by Defendant and none of those mentioned above reconcile Del Prado and the significance of the 1982 amendment and later versions of section 627.727(1), which required waiver of UM coverage to be in writing. Nor is the Court convinced by Defendant's argument that the requirement that waiver of UM coverage be in writing is merely a shifting evidentiary standard by relying on a separate sentence that reads "[i]f this form is signed by a named insured, it will be conclusively presumed that there was an informed, knowing rejection of coverage or election of lower limits on behalf of all insureds." Fla. Stat. § 627.727(1).

Section 627.727(1) reflects a "legislative intent to place a heavy duty upon insurers to obtain a knowing rejection of statutorily provided for uninsured motorist limits and to reflect a public policy in Florida to favor full uninsured motorist coverage for Florida residents . . . ." Nationwide Prop. & Cas. Ins. Co. v. Marchesano, 482 So. 2d 422, 424–25 (Fla. 2d DCA 1985), approved, 506 So. 2d 410 (Fla. 1987). To allow an

insured to orally waive its right to have UM coverage unless waived on a specific approved written form would frustrate the purpose of the 1982 amendment. Moreover, there are multiple rights provided in section 627.727, including (1) the right to UM coverage when purchasing bodily injury insurance (substantive right) and (2) to have the right to UM coverage waived only when in writing (procedural right). To allow alternative or less onerous waivers of the procedural right to only have UM coverage waived through an approved written form renders the procedural right meaningless. The Florida Legislature would be left to answer the question, "Why ever bother to require that a right only be waived in writing?" The Legislature should not have to confront this question where it has made its intent clear. Accord Larimore v. State, 2 So. 3d 101, 106 (Fla. 2008), as revised on denial of reh'g (Jan. 29, 2009) (holding that a "statute should be interpreted to give effect to every clause in it, and to accord meaning and harmony to all of its parts.") (internal quotations omitted). Finally, Defendant fails to offer an explanation as to why some rights, such as the one to have purchases of real estate made in writing are not waivable, while rights to have UM coverage unless waived in writing are waivable.[6]

More importantly, Defendant's construction contradicts the plain language of section 627.727(1). The Florida Supreme Court held that when interpreting a statute, there is no need to resort to rules of statutory construction "when the language of a statute is plain and its meaning clear . . . ." Kimbrell v. Great Am. Ins. Co., 420 So. 2d 1086, 1088 (Fla. 1982) (holding that section 627.727(1) requires UM coverage absent a

[6] The Court acknowledges Florida's distinction between waiver and estoppel as explained in DK Arena, Inc. v. EB Acquisitions I, LLC, 112 So. 3d 85, 97 (Fla. 2013).

knowingly made rejection of UM benefits."). Section 627.717(1) unambiguously requires a waiver of UM coverage to be in writing before that waiver can be effective. See Jervis v. Castaneda, 243 So. 3d 996, 998 (Fla. 4th DCA 2018) ("The nine 'shalls' in the statute lead to the conclusion that the written notice is a mandatory prerequisite to an insured's waiver of the right to UM coverage."), review denied sub nom. GEICO Gen. Ins. Co. v. Jervis, No. SC18-1169, 2018 WL 6630502 (Fla. Dec. 17, 2018).[7]

In this case, it is undisputed that Asbury did not want UM coverage and that Defendant did not intend to provide it. However, it is also undisputed that Asbury did not waive UM coverage on an approved form prior to Plaintiff's accident. Defendant argues that other documents prove that Asbury rejected UM coverage in writing. When reviewing these documents, the Court resolves any ambiguities in the insurance contract against Defendant. See Washington Nat. Ins. Corp. v. Ruderman, 117 So. 3d 943, 950 (Fla. 2013) (holding that "it has long been a tenet of Florida insurance law that an insurer, as the writer of an insurance policy, is bound by the language of the policy, which is to be construed liberally in favor of the insured and strictly against the insurer").

---

[7] In its supplemental brief, Defendant argues that this Court is bound to follow Florida's Fifth District Court of Appeal because that is the appellate division from which this case originates. (Doc. 73 at 2 n.3 (citing Bravo v. United States, 532 F.3d 1154, 1165–66 (11th Cir. 2008)). However, the application of Bravo to this case is tentative, and the Eleventh Circuit Court of Appeals is clear that unless the highest court of the state has decided the matter, the federal court applying state substantive law should rule consistent with how it predicts that the state's highest court would rule. See Molinos Valle Del Cibao, C. por A. v. Lama, 633 F.3d 1330, 1348 (11th Cir. 2011) (holding that federal courts "may disregard these [intermediate appellate] decisions if persuasive evidence demonstrates that the highest court would conclude otherwise").

First, Defendant generally references Docket Entry 59.1. Docket Entry 59.1 is an amalgamation of documents, which includes an affidavit, an email chain, an insurance contract, and an UM waiver form dated March 25, 2011.[8] Defendant's reference to the entire exhibit for its factual assertions renders Defendant vulnerable to having material facts considered as unsupported by record evidence. Accord. Chavez v. Sec'y Fla. Dep't of Corr., 647 F.3d 1057, 1061 (11th Cir. 2011) ("[D]istrict court judges are not required to ferret out delectable facts buried in a massive record . . . .").[9] The Court is left to guess as to which part of the Docket Entry supports Defendant's claim that Asbury rejected UM coverage in writing prior to the accident.

Initially, the Court notes the March 25, 2011 waiver beginning on page 34 does not show a written waiver prior to the accident. Starting on page 6, the "Garage Coverage Form/Policy Declarations" document provides that the reader should see the state schedule of limits for benefits and that the price for UM coverage is included in the premium. On page 7, the section providing for UM insurance schedule reads that "[i]f UM coverage is afforded in . . . FL . . . UIM coverage is included[.]" The email chain begins on page 9 and does not mention UM coverage or waiver thereof. On page 17 of the policy under "Garage Liability" UM coverage is listed as "Rejected/Statutory

---

[8] Among other things, the affidavit declares that Asbury's failure to seek amendment to the policy "establishes that the Liberty Mutual Policy reflected what Asbury wanted."

[9] The Court acknowledges that the briefing and record evidence in this case was not overwhelmingly voluminous, however, the Court cannot speculate as to which facts support which propositions when those facts are buried in multiple documents and are not specifically cited.

Minimum" and references "symbol 26."[10] Page 28 reads that the amount of UM benefits available are "[s]tatutory[.]" Page 33 appears to mirror page 17 in all material aspects.[11] No reasonable jury could find that these document waived UM benefits, much less unambiguously waives them or waived them in a manner consistent with section 627.717(1). In fact, while the record is that Asbury intended to waive UM benefits, the Court cannot find any evidence that Asbury actually waived (1) its rights to have any waiver in writing or (2) its right to UM coverage, orally or otherwise. To the extent any waiver might have occurred orally or on a non-approved insurance waiver form, such waiver would not be effective because that waiver failed to comply with section 672.727(1).[12] The undisputed evidence is that there was not a timely waiver of UM benefits and alternatively, any alleged waiver in this case did not comply with 672.727(1).

Accordingly, after due consideration, it is

**ORDERED:**

---

[10] Symbol 26 corresponds to a key page 8 of Docket Entry 59.1, which provides that "26" means

> Owned "Autos" Subject to A Compulsory Uninsured Motorists Law . . . Only those "autos" you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject [UM] coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state [UM] requirement.

[11] Defendant specifically references this page through the Affidavit of Kathryn Cole.

[12] To be sure, the Court does not think there is sufficient evidence of the waiver of UM benefits in any form such that a reasonable jury could find waiver.

1. Plaintiff's Motion for Summary Judgment on Declaratory Action (Doc. 44) is **GRANTED**. The Clerk of the Court shall enter judgment that reflects that Plaintiff is entitled to uninsured motorists benefits up to the sum of two million ($2,000,000) dollars provided by insurance policy AV2-651-290229-021.[13]
2. Defendant's Response in Opposition and Cross Motion for Summary Judgment (Doc. 59) is **DENIED**.
3. This case shall remain administratively closed until further order of the Court. On or before **February 18, 2019**, the parties shall inform the Court as to what issues, if any, remain to be adjudicated by this Court.[14]

**DONE** and **ORDERED** in Jacksonville, Florida this 16th day of January, 2018.

BRIAN J. DAVIS
United States District Judge

2
Copies furnished to:

Counsel of Record

/p

[13] The Court will determine any entitlement to attorneys' fees at this case's conclusion and upon proper motion.

[14] This deadline does not impact or in any way toll deadlines associated with any appeal of this Order.