# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

CHRISTOPHER ALAN BERMAN,          CASE NO.:    3:16-cv-00384-BJD-JBT

      Plaintiff,

vs.

LIBERTY MUTUAL FIRE INSURANCE COMPANY,

      Defendants.

_____/

## PLAINTIFF'S MOTION IN LIMINE TO RESTRICT TESTIMONY AND ARGUMENT ON ISSUES OF CAUSATION

COMES NOW the Plaintiff, CHRISTOPHER ALAN BERMAN, ("Plaintiff"), by and through undersigned counsel, and hereby moves this Honorable Court for its Order in Limine restricting the defense from arguing issues of causation as they relate to Plaintiff's cervical and thoracic injuries and subsequent treatment, and states in support thereof as follows::

## OVERVIEW

1.     On 03/05/2011, while in the course and scope of his employment, the Plaintiff was rear-ended by an underinsured motorist and sustained injuries to his neck and back.

2.     The Defendant, Liberty Mutual Fire Insurance Company ("Liberty Mutual") insured the Plaintiff's employer and provided the Plaintiff insurance coverage under two separate policies: underinsured motorist insurance (UM) and workers compensation insurance (WC).

3.     The Plaintiff filed a claim against Liberty Mutual for WC benefits on 06/07/2011 for injuries to his neck and back. (see Petition attached as Exhibit 1)

4.      Liberty Mutual vigorously contested the issue of causation and had multiple compulsory examinations done of the Plaintiff. However, multiple physicians that examined the Plaintiff related his neck and back injuries to the collision, including the independent examiner retained by the judge of compensation.

5.      On 03/31/2016, while the WC case was still ongoing, the Plaintiff filed this claim against Liberty Mutual for UM benefits for his injuries to his neck and back.

6.      Presumably because the issue of causation was still being determined in the WC case, Liberty Mutual's Answer to the Plaintiff's allegations of causation of injury stated in the Complaint was: "Without knowledge at this time therefore denied."

7.      Eventually, Liberty Mutual stipulated in the WC case that the collision was the legal cause of the Plaintiff's neck and neck injuries and that the extensive treatment related thereto was reasonable and necessary as a result of the collision. However, Liberty Mutual never amended its Answer to admit to causation or damages in this UM case.

8.      More concerning is that, although not stated in his expert disclosure or report, and in direct contradiction to Liberty Mutual's stipulations, the opinion of other medical examiners and the primary treating physician, the medical examiner hired by Liberty Mutual in this UM case, Gerard Gerling, MD, seems to have the opinion that the collision was not a legal cause of the Plaintiff's neck and back injuries.

9.      This opinion or argument from Liberty Mutual or its witnesses should not be permitted due to the application of Collateral Estoppel. The issue of causation, as it relates to the Plaintiff's neck and back injuries, has already been litigated and stipulated to by Liberty Mutual.

10.    It would be inequitable, wasteful and frivolous for Liberty Mutual to reopen and relitigate the issue of causation all over at the trial of this case: inequitable because it would require the Plaintiff to present all these witnesses and incur the costs associated therewith; wasteful because it would lengthen the trial by at least another full day; frivolous because this position is contrary of what Liberty Mutual has already admitted after extensive litigation.

## MEMORANDUM OF LAW IN SUPPORT OF THIS MOTION IN LIMINE

11.    It is undisputed that Plaintiff, CHRISTOPHER BERMAN, brought a petition for workers' compensation benefits against LIBERTY MUTUAL FIRE INSURANCE COMPANY for injuries sustained in the automobile collision of March 5, 2011. (Exhibit 1). It is further undisputed that the Defendant Liberty Mutual agreed to compensate the Plaintiff for medical treatment to his neck and back as caused by the collision. (See stipulations in Composite Exhibit 2).

### I.    Collateral Estoppel

12.    "Collateral estoppel, or issue preclusion, bars the re-litigation of issues of fact or law that were actually litigated and decided in a prior suit." CSX Transp., Inc. v. Bhd. of Maint. of Way Emps., 327 F.3d 1309, 1317 (11th Cir.2003).

13.    Collateral estoppel applies where: (1) the issue at stake is identical to the one involved in the earlier proceeding; (2) the issue was actually litigated in the earlier proceeding; (3) the determination of the issue was a critical and necessary part of the earlier case; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue. Tampa Bay Water v. HDR Eng'g, Inc., 731 F.3d 1171, 1180 (11th Cir. 2013).

14.     Once a claimant has established compensability of an injury, by a prior ruling or a stipulation, the employer's insurance carrier cannot challenge the causal connection between the work accident and the injury. Perez v. Se. Freight Lines, Inc., 159 So. 3d 412 (Fla. 1st DCA 2015); Meehan v. Orange Cty. Data & Appraisals, 272 So. 3d 458 (Fla. 1st  DCA 2019); Cespedes v. Yellow Transp., Inc. (URC)/Gallagher Bassett Servs., Inc., 130 So. 3d 243 (Fla. 1st DCA 2013); *See also* Engler v. Am. Friends of Hebrew Univ., 18 So. 3d 613 (Fla. 1st DCA 2009) (Relitigating conclusion that compensable motor vehicle accident was major contributing cause of workers' compensation claimant's injuries was contrary to res judicata).

## II.     Identical Issues: Causation

15.     The issue of injury causation is virtually the same under the WC standards and the negligence standards applied in this case, the only difference being that WC cases require a higher burden of proof.

16.     Fla. Stat. § 440.09 provides that:

> The injury, its occupational cause, and any resulting manifestations or disability must be established to a reasonable degree of *medical certainty*, based on objective relevant medical findings, and the accidental compensable injury must be the major contributing cause of any resulting injuries. For purposes of this section, 'major contributing cause' means the cause which is more than 50 percent responsible for the injury as compared to all other causes combined for which treatment or benefits are sought.... [and] 'objective relevant medical findings' are those objective findings that correlate to the subjective complaints of the injured employee and are confirmed by physical examination findings or diagnostic testing."

17.     Similarly, in actions based in negligence, the Plaintiff must show that the tortfeasor's negligence was a legal cause of loss injury or damage to the Plaintiff. In this regard, "Florida follows the 'more likely than not' standard in proving causation, i.e., that the negligence 'probably caused' the plaintiff's injury." Cox v. St. Josephs Hosp., 71 So. 3d 795, 799 (Fla. 2011)

(Holding that a prima facie case of causation was established by opinion of causation rendered "within reasonable *medical probability*").

18.     However, unlike the WC standard of "major contributing cause," in negligence cases "a defendant's conduct need not be the only cause of a plaintiff's injuries, or even fifty-one percent of the cause; rather, the plaintiff must present evidence that the defendant's conduct was, more likely than not, a "substantial factor" in causing the injury." Whitney v. R.J. Reynolds Tobacco Co., 157 So. 3d 309, 312 (Fla. 1st DCA 2014).

19.     This difference is significant because it shows that the Plaintiff has already established an even higher standard of causation in the WC than would be needed in this UM case. Grogan v. Garner, 498 U.S. 279 (1991).

### III.   Causation - Already Litigated

20.     Liberty Mutual vigorously contested the issue of causation in the WC case. Liberty Mutual and the WC Judge had multiple doctors examine the Plaintiff.  Most definitive were Dr. Arnold Zeal concerning the thoracic surgery and Dr. Jonathan Greenberg regarding the cervical fusion.

21.     Dr. Zeal concluded, "I believe it is more likely than not that the 2011 accident is the major contributing factor to this current thoracic pain and radiculopathy." (See Zeal's report attached as exhibit 3).

22.     As a result of the treating physician's recommendations for surgery and Liberty Mutual's continued denial of causation, the Judge in the WC case appointed Dr. Jonathan Greenberg, former head of neurosurgery at Orlando Regional Hospital, to issue an unbiased expert opinion.

23.     Dr. Greenberg in his report dated 2/11/13 specifically stated, "Patient's work-related motor vehicle accident is the major injury because of the need for the treatments as recommended above.  This includes surgery, which is medically necessary…the patient's work injury is the major contributing cause for the need for the patient's surgery."  (See Greenberg's report attached as Exhibit 4).

24.     After these examinations, a series of Orders and stipulations by Liberty Mutual were entered for total permanent disability, medical treatment for the neck and back as well as Plaintiff's attorney's fees for having to litigate these issues. (See Composite Exhibit 2).

25.     The Plaintiff subsequently underwent disc replacement surgery in his cervical spine and a multilevel fusion in his thoracic spine in addition to injections, physical therapy, chiropractic treatment, multiple hospitalizations, and diagnostic testing including MRIs and nerve conduction studies.  All these tests, treatments and surgeries were stipulated as compensable by the workers compensation carrier pursuant to the stipulation approved by the workers compensation judge.

**IV.     Causation: a Critical and Necessary Issue**

26.     As stated previously, pursuant to Fla. Stat. § 440.09 the issue of causation is a threshold issue for a claimant to receive any benefits in a workers' compensation case. This is made obvious by the multiple medical examinations the Plaintiff underwent so that doctors could determine if the collision was a "major contributing *cause*" of his injuries and thus what treatment would have been *causally* related to the collision and compensable.

27.     Causation was most certainly a critical and necessary part of the WC case.

V.      **Same Party and Fair Opportunity to Litigate the Issue**

28.      The Defendant in this action for UM benefits, Liberty Mutual Fire Insurance Company, is specifically named as the Defendant in the Plaintiff's Petition for Workers' Compensation Benefits (Exhibit 1), the pleadings filed by the defense, and Orders entered by the Court. (See Defendant's Response to Petition filed 8/3/12 as Exhibit 5 and Pretrial Order dated 12/10/12 attached as Exhibit 6).

**WHEREFORE,** the Plaintiff respectfully requests that this Honorable Court restrict argument and testimony by the defense generally in the area of causation and also to limit, restrict, or strike the testimony of Dr. Gerling as to his opinion regarding causation.

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that the foregoing pleading has been electronically filed with the Clerk of the Court by using the CM/ECF system and sent via email to all parties of record on the attached Certificate of Service List as listed below, on this 2nd day of January, 2020.

Respectfully submitted,

By: _____

JACK J. FINE, ESQ.
*Counsel for Plaintiff*
**FINE, FARKASH & PARLAPIANO, P.A.**
Florida Bar Number: 223700
622 Northeast First Street
Gainesville, Florida 32601
Telephone: (352) 376-6046
Facsimile: (352) 372-0049
Primary email: jfine@ffplaw.com
Secondary email: jduchaj@ffplaw.com

## CERTIFICATE OF SERVICE LIST

J. Pablo Cáceres, Esq.
Butler Weihmuller Katz Craig, LLP
400 North Ashley Drive, Suite 2300
Tampa, Florida 33602
Florida Bar No.: 131229
Telephone: (813) 281-1900
Facsimile: (813) 281-0900
pcaceres@butler.legal
hjones@butler.legal
jfan@butler.legal
Attorneys for Defendants, Liberty Mutual Insurance
Company and Liberty Mutual Fire Insurance Company

Ryan Hilton, Esq.
Butler Weihmuller Katz Craig, LLP
400 North Ashley Drive, Suite 2300
Tampa, Florida 33602
Florida Bar No.: 131229
Telephone: (813) 281-1900
Facsimile: (813) 281-0900
rhilton@butler.legal
Attorneys for Defendants, Liberty Mutual Insurance
Company and Liberty Mutual Fire Insurance Company

Caroline Adams, Esq.
Butler Weihmuller Katz Craig, LLP
400 North Ashley Drive, Suite 2300
Tampa, Florida 33602
Florida Bar No.: 131229
Telephone: (813) 281-1900
Facsimile: (813) 281-0900
cadams@butler.legal
tmarksman@butler.legal
Attorneys for Defendants, Liberty Mutual Insurance
Company and Liberty Mutual Fire Insurance Company

# STATE OF FLORIDA
## DIVISION OF ADMINISTRATIVE HEARINGS
### OFFICE OF THE JUDGES OF COMPENSATION CLAIMS

## PETITION FOR WORKERS' COMPENSATION BENEFITS

Employee/Claimant petitions the Office of the Judges of Compensation Claims for an order requiring Employer/Carrier to provide benefits due under Chapter 440, Florida Statutes as claimed below.

| | |
|---|---|
| **EMPLOYEE:** Christopher Berman<br><br>**ADDRESS:** 303 Augusta Circle Saint Augustine FL, 32086<br><br>**TELEPHONE:** 904-325-1588 | **OJCC CASE NO.** (required if previously issued): **11-013073-RJH**<br><br>or, **EMPLOYEE'S SOCIAL SECURITY NO.:** «SSN»<br>or attach a **VERIFIED MOTION FOR SUBSTITUTE IDENTIFICATION NUMBER** (form available on the OJCC website at www.jcc.state.fl.us) |
| **EMPLOYER:** Coggin Honda<br><br>**ADDRESS:** 2898 U.S. Highway 1 South Saint Augustine FL, 32086<br><br>**TELEPHONE:** 904-797-2688 | **CARRIER:** Liberty Mutual Fire Insurance Company<br><br>**ADDRESS:** P.O. BOX 31204 Tampa FL, 33631<br><br>**TELEPHONE:** 800-282-6218 |
| **CLAIMANT'S NAME** (if different from the employee):<br><br>**ADDRESS:** | **TELEPHONE NO.:** |
| **EMPLOYEE/CLAIMANT'S ATTORNEY** (if any): David Dearing, Attorney<br><br>**FLORIDA BAR NO.:** 0885673<br>**ADDRESS:** 3127 Atlantic Boulevard Jacksonville, FL 32207 | **TELEPHONE NO.:**   904-399-8989 |
| **DATE OF ACCIDENT** (disablement date if occupational disease): 3/5/2011 | **ACCIDENT COUNTY:** St Johns<br>**ACCIDENT STATE:** Florida |
| **DETAILED DESCRIPTION OF JOB RESPONSIBILITIES:**<br>SALES AND LEASING | **SPECIFIC WORK BEING PERFORMED WHEN INJURY OCCURRED:**<br>CLAIMANT WAS A PASSENGER IN A VEHICLE. |
| **DETAILED DESCRIPTION OF THE ACCIDENT:**<br>CLAIMANT WAS A PASSENGER IN A VEHICLE THAT WAS INVOLVED IN A MOTOR VEHICLE ACCIDENT.<br><br>**PART(S) OF BODY INJURED:** NECK AND BACK<br><br>**CHARACTER OF DISABILITY:** THE INJURY/INJURIES OCCASIONED BY THE EVENTS DESCRIBED ABOVE HAS/HAVE ADVERSELY AFFECTED THE INJURED EMPLOYEE'S<br>CAPACITY TO EARN IN THE SAME OR ANY OTHER EMPLOYMENT THE WAGES THAT THE EMPLOYEE WAS RECEIVING AT THE TIME OF THE INJURY.  SPECIFICALLY. | **IS THIS PETITION FOR MEDICAL BENEFITS ONLY:** N<br><br>**AWW 13 WEEKS PRECEDING ACCIDENT:** 782.00<br><br>**CURRENT AWW:**  782.00<br><br>**CURRENTLY WITH SAME EMPLOYER:** Y<br><br>**CURRENT WORK LEVEL:** NOT WORKING/NO WAGES<br><br>**HAS MMI BEEN REACHED:** N    **IF SO, DATE OF MMI:** |

Jurisdiction: The Judge of Compensation Claims has jurisdiction over the parties and the subject matter of this petition.

Managed care grievance procedures, if required, were exhausted under F.S. §440.192(3). The Grievance was dated:



EXHIBIT
1

OJCC Form PFB (Revised 9-1-2006)

## MONETARY (INDEMNITY) BENEFITS CLAIMED, FLORIDA STATUTES §440.15

| | |
|---|---|
| **CLASS OF BENEFIT:** TEMPORARY TOTAL DISABILITY    **STARTING DATE:** 4/4/2011    **ENDING DATE:    CONTINUING:** Y | |
| **DETAILS:** | |

| | |
|---|---|
| **CLASS OF BENEFIT:** TEMPORARY PARTIAL DISABILITY    **STARTING DATE:** 4/4/2011    **ENDING DATE:    CONTINUING:** Y | |
| **DETAILS:** | |

| | |
|---|---|
| **CLASS OF BENEFIT:    STARTING DATE:    ENDING DATE:    CONTINUING:** N | |
| **DETAILS:** | |

## MEDICAL AND REHABILITATIVE BENEFITS, FLORIDA STATUTES §440.13

| | |
|---|---|
| **CLASS OF BENEFIT:    SPECIFIC TYPE:** | |
| **DETAILS:** | |

| | |
|---|---|
| **CLASS OF BENEFIT:    SPECIFIC TYPE:** | |
| **DETAILS:** | |

| | |
|---|---|
| **CLASS OF BENEFIT:    SPECIFIC TYPE:** | |
| **DETAILS:** | |

| | |
|---|---|
| **CLASS OF BENEFIT:    SPECIFIC TYPE:** | |
| **DETAILS:** | |

| | |
|---|---|
| **CLASS OF BENEFIT:    SPECIFIC TYPE:** | |
| **DETAILS:** | |

| | |
|---|---|
| **CLASS OF BENEFIT:    SPECIFIC TYPE:** | |
| **DETAILS:** | |

## PENALTIES, INTEREST, COSTS, ATTORNEY'S FEES, OR OTHER CLAIMS

| | |
|---|---|
| **CLASS OF BENEFIT:** ATTORNEY FEES | |
| **DETAILS:** | |

| | |
|---|---|
| **CLASS OF BENEFIT:** PENALTIES, INTEREST AND COSTS | |
| **DETAILS:** | |

| | |
|---|---|
| **CLASS OF BENEFIT:** | |
| **DETAILS:** | |

## Certificate of Good Faith Effort to Resolve Dispute,
## Acknowledgement of Fraud Statement and Certificate of Service

The claimant or, if the claimant is represented by counsel, the claimant's attorney, certifies that he or she has made a good faith effort to resolve the dispute and that the claimant or attorney was unable to resolve the dispute with the employer/carrier/servicing agent.

The claimant has read and understands the following: "Any person who, knowingly and with intent to injure, defraud or deceive any employer or employee, insurance company, or self-insured program, files a statement of claim containing any false or misleading information commits insurance fraud, punishable as provided in s.817.234." By signing below, the claimant attests that he or she has reviewed, understands and acknowledges the foregoing notice.  In accordance with Florida Statutes § 440.192(1), a copy of this petition for benefits has been served by certified mail on the injured worker's employer and the employer's carrier on ___6-8-11___.  A copy of this petition has also been served on the attorney for the employer/carrier if known.

WHEREFORE, claimant requests an order directing the employer to provide the benefits requested.

_____   6-7-11          _____   6-7-11
Claimant Signature        Date                    Counsel for Claimant        Date

STATE OF FLORIDA
DIVISION OF ADMINISTRATIVE HEARINGS
OFFICE OF THE JUDGES OF COMPENSATION CLAIMS
JACKSONVILLE DISTRICT

**EMPLOYEE:**
**Christopher Berman**
303 Augusta Circle
Saint Augustine, FL 32086

**ATTORNEY FOR EMPLOYEE:**
**Jonathan Israel, Esquire**
Rudolph, Israel & Ellis, PA
4465 Baymeadows Road Suite 3
Jacksonville, FL 32217

**EMPLOYER:**
**Asbury Automotive Group, Inc.**
2905 Premiere Parkway
Suite 300
Duluth, GA 30097

**ATTORNEY FOR EMPLOYER/CARRIER:**
**Cynthia L. Denker, Esquire**
LAW OFFICE OF AMY L. WARPINSKI
1301 Riverplace Boulevard, Suite 1640
Jacksonville, FL 32207

**CARRIER:**
**Liberty Mutual Insurance Company**
P.O. Box 31204
Tampa FL 22621
**CLAIM NO.: WC555-A08161-00**

**DATE OF ACCIDENT:**
**March 5, 2011**

**OJCC CASE NUMBER:**
**11-013073 RJH**

## JOINT STIPULATION ON RESOLUTION OF ISSUES AND
## ATTORNEY FEES

It is hereby stipulated and agreed to by the parties to this cause that all issues raised in the Petitions for Benefits dated 2/19/16 and 6/10/16 have been resolved as follows:

1. The parties stipulate and agree that the claimant's correct AWW/CR, including all allowable earnings and fringe benefits, is $601.68/$401.12, and that all indemnity benefits have been paid appropriately to date

2. The employer/carrier agree to authorize treatment for the Thoracic spine condition with Dr. Greenwald, to include authorization of the recommended T-spine surgery.

3. The claim for authorization of the inversion table is moot, as Dr. Greenwald no longer recommends that modality before surgery.

4. The parties agree that $5,000.00 in an appropriate attorney fee and costs to be paid by the employer/carrier to claimant's counsel, for his efforts in securing authorization of Thoracic spine treatment including surgery. It is stipulated that the sum of $5,000.00 represents the entire claimant attorney's fee and costs to be paid by the employer/carrier to resolve all outstanding fee issues to date. The parties stipulate that the employer/carrier shall have 14 days from the date the Order is signed to provide payment.

WHEREFORE, the parties request the entry of an Order approving this Stipulation.

DATED this _31_ day of _August_____, 2016.

Composite

**EXHIBIT**
2

Christopher Berman

Cynthia L. Denker, Esquire
LAW OFFICE OF AMY L. WARPINSKI
Attorney for Employer/Carrier
1301 Riverplace Boulevard, Suite 1640
Jacksonville, FL 32207
Telephone: 904-346-5422
Florida Bar #: 172448

Jonathan Israel, Esquire
RUDOLPH, ISRAEL & ELLIS, PA
Attorneys for Claimant
4465 Baymeadows Road Suite 3
Jacksonville, FL 32217
Telephone: (904) 479-5111
FBN: 0047325

OJCC Case # : 11-013073 RJH
Bar #: 172448
Joint Stipulation on Resolution of Issues
Page 2 of 1

STATE OF FLORIDA
DIVISION OF ADMINISTRATIVE HEARINGS
OFFICE OF THE JUDGES OF COMPENSATION CLAIMS
JACKSONVILLE DISTRICT

**EMPLOYEE:**
**Christopher Berman**
303 Augusta Circle
Saint Augustine, FL 32086

**ATTORNEY FOR EMPLOYEE:**
**Jonathan Israel, Esquire**
Rudolph, Israel & Ellis, PA
4465 Baymeadows Road Suite 3
Jacksonville, FL 32217

**EMPLOYER:**
**Asbury Automotive Group, Inc.**
2905 Premiere Parkway
Suite 300
Duluth, GA 30097

**ATTORNEY FOR EMPLOYER/CARRIER:**
**Cynthia L. Denker, Esquire**
LAW OFFICE OF AMY L. WARPINSKI
1301 Riverplace Boulevard, Suite 1640
Jacksonville, FL 32207

**CARRIER:**
**Liberty Mutual Insurance Company**
P.O. Box 31204
Tampa FL 33631
**CLAIM NO.: WC555-A08161-00**

**DATE OF ACCIDENT:**
**March 5, 2011**

**OJCC CASE NUMBER:**
**11-013073 RJH**

---

### ORDER ON RESOLUTION OF ISSUES AND ATTORNEY FEES

Upon the foregoing Stipulation, it is hereby  ORDERED AND ADJUDGED that all claims have been resolved as follows:

1.  The claimant's correct AWW/CR, including all allowable earnings and fringe benefits, is $601.68/$401.12, and that all indemnity benefits have been paid appropriately to date

2.  The employer/carrier shall authorize treatment for the Thoracic spine condition with Dr. Greenwald, to include authorization of the recommended T-spine surgery.

3.  The claim for authorization of the inversion table is moot, as Dr. Greenwald no longer recommends that modality before surgery.

4.  The Employer/Carrier shall pay claimant's counsel $5,000.00 to resolve all outstanding fee and costs issues to date. The parties stipulate that the employer/carrier shall have 14 days from the date the Order is signed to provide payment.

5.  All Petitions for Benefits are hereby dismissed.

DONE AND ORDERED at Jacksonville, Florida, this 31st day of August, 2016.

_Ralph J. Humphries_

JUDGE OF COMPENSATION CLAIMS

## Certificate of Service

**This is to CERTIFY** that a true copy of the foregoing order was served to counsel via electronic mail and to parties through their respective attorney's of record, or by U. S. Mail if unrepresented, this **31**st day of **August** 2016.

*Tammy Grandel*
_____
Administrative Secretary to Judge Ralph J. Humphries

COPIES FURNISHED:

Liberty Mutual Insurance
175 Berkley Street
Boston, MA  02116
CMC555Tampa@libertymutual.com;

Jonathan Israel
Rudolph, Israel and Ellis, P.A.
4465 Baymeadows Road Suite 3
Jacksonville, FL  32217
israel@rie-law.com,sumpter@rie-law.com

John J. Rahaim, II, Attorney/Partner/Mr.
LAw Offices of John J Rahaim II
4811 Beach Blvd, Suite 204
Jacksonville, FL  32207
jrahaim@jaxlegalhelp.com,jalbano@jaxlegalhelp.com

Cynthia L. Denker
The Law Office of Amy L. Warpinski
1301 Riverplace Blvd.  Suite 2646
Jacksonville, FL  32207
cynthia.denker@libertymutual.com,jacksonvillelegalmail@libertymutual.com

David A. McCranie
McConnaughhay, Duffy, Coonrod, Pope, Weaver, Stern & Thomas P.A.
165 Wells Rd., Suite 302
Orange Park, FL  32073
dmccranie@mcconnaughhay.com,bmeeks@mcconnaughhay.com

Amy L. Warpinski
Law Office Of Amy L. Warpinski
1301 Riverplace Blvd. Suite 1640
Jacksonville, FL  32207
amy.warpinski@libertymutual.com,JacksonvilleLegalMail@LibertyMutual.com

STATE OF FLORIDA
DIVISION OF ADMINISTRATIVE HEARINGS
OFFICE OF THE JUDGES OF COMPENSATION CLAIMS
JACKSONVILLE DISTRICT

**EMPLOYEE:**
Christopher Berman
303 Augusta Circle
Saint Augustine, FL 32086

**ATTORNEY FOR EMPLOYEE**
Jonathan B. Israel
HARRIS, GUIDI, et al.
1837 Hendricks Ave.
Jacksonville, FL 32207

**FORMER ATTORNEY FOR EMPLOYEE:**
John Rahaim, II, Esquire
RAHAIM MOORE, P.A.
3127 Atlantic Blvd.
Jacksonville, FL 32207

**EMPLOYER:**
Asbury Automotive Group, Inc.
2905 Premiere Parkway
Suite 300
Duluth, GA 30097

**ATTORNEY FOR EMPLOYER/CARRIER:**
David A. McCranie, Esquire
LAW OFFICE OF AMY L. WARPINSKI
1301 Riverplace Boulevard, Suite 620
Jacksonville, Florida 32207
Telephone: (904) 346-5422

**CARRIER:**
Liberty Mutual Ins. Co.
P.O. Box 31204
Tampa, FL 33631

**DATE OF ACCIDENT:**
March 5, 2011

**OJCC CASE NUMBER:**
11-013073 RJH

**CLAIM NO.: WC555-A08161-00**

---

## JOINT STIPULATION ON RESOLUTION OF ISSUES

It is hereby stipulated and agreed to by the parties to this cause that all pending issues have been resolved as follows:

1.      The Employer/Carrier will pay PTD benefits and PTD supplemental benefits from 5/24/2013 to the present and continuing for so long as the claimant remains permanently totally disabled.

2.      The Employer/Carrier reserves the right to discontinue such PTD and PTD supplemental benefits in the future unilaterally and without prior leave of court if, in the opinion of the Employer/Carrier, the Claimant is no longer permanently totally disabled under s. 440.15(1), Fla. Stat.

3.      The Employer/Carrier will pay penalties and interest on late-paid compensation benefits for the period from 5/24/2013 through 11/14/2013, with credit given for the $2,000.00 previously advanced to the Claimant per order of the Court entered on 8/15/2013.

4.      The Claimant's attorneys, John Rahaim, II, Esq., and Jonathan B. Israel, Esq., are entitled

to the payment of carrier-paid attorney's fees under s. 440.34, Fla. Stat., for services rendered to the Claimant in this case.

5.      The parties agree that a reasonable attorney's fee for all services rendered to date by both of Claimant's attorneys is TWENTY-FIVE THOUSAND EIGHT HUNDRED AND 00/100 DOLLARS ($25,800.00).

6.      The Claimant's attorneys agree that the above fee shall be allocated as follows: (1) SEVENTEEN THOUSAND AND 00/100 DOLLARS ($17,000.00) to Attorney Rahaim; (2) EIGHT THOUSAND EIGHT HUNDRED AND 00/100 DOLLARS ($8,800.00) to Attorney Israel.

WHEREFORE, the parties request the entry of an Order approving this Stipulation.

DATED this _____ day of ___JANUARY___, 2014.

Christopher Berman

David A. McCranie, Esquire
LAW OFFICE OF AMY L. WARPINSKI
Attorneys for Employer/Carrier
1301 Riverplace Boulevard, Suite 620
Jacksonville, Florida 32207
Telephone: (904) 346-5422
FBN: 351520

Matthew B. Israel
HARRIS, GUIDI, et al.
Attorney for Claimant
1837 Hendricks Ave.
Jacksonville, FL 32207
Telephone: (904) 398-9002
FBN: 047325

John Rahaim, II, Esquire
RAHAIM MOORE, P.A.
Former attorney for Claimant
3127 Atlantic Blvd.
Jacksonville, FL 32207
Telephone: (904) 399-8989
FBN: 858481

STATE OF FLORIDA
DIVISION OF ADMINISTRATIVE HEARINGS
OFFICE OF THE JUDGES OF COMPENSATION CLAIMS
JACKSONVILLE DISTRICT

**EMPLOYEE:**
**Christopher Berman**
303 Augusta Circle
Saint Augustine, FL 32086

**ATTORNEY FOR EMPLOYEE**
**Jonathan B. Israel**
HARRIS, GUIDI, et al.
1837 Hendricks Ave.
Jacksonville, FL 32207

**FORMER ATTORNEY FOR EMPLOYEE:**
**John Rahaim, II, Esquire**
RAHAIM MOORE, P.A.
3127 Atlantic Blvd.
Jacksonville, FL 32207

**EMPLOYER:**
**Asbury Automotive Group, Inc.**
2905 Premiere Parkway
Suite 300
Duluth, GA 30097

**ATTORNEY FOR EMPLOYER/CARRIER:**
**David A. McCranie, Esquire**
LAW OFFICE OF AMY L. WARPINSKI
1301 Riverplace Boulevard, Suite 620
Jacksonville, Florida 32207
Telephone: (904) 346-5422

**CARRIER:**
**Liberty Mutual Ins. Co.**
P.O. Box 31204
Tampa, FL 33631

**DATE OF ACCIDENT:**
**March 5, 2011**

**OJCC CASE NUMBER:**
**11-013073 RJH**

**CLAIM NO.: WC555-A08161-00**

### ORDER ON RESOLUTION OF ISSUES

Upon the foregoing Stipulation, it is hereby

ORDERED AND ADJUDGED that all claims have been resolved pursuant to the terms of the above Stipulation. The parties shall comply with the terms of the attached Stipulation, and pay attorney's fees as follows: to John J. Rahaim, II, Esq., $17,000.00; and to John B. Israel, Esq., $8,800.00 as specified therein. All Petitions for Benefits are hereby dismissed.

DONE AND ORDERED in chambers at Jacksonville, Duval County, Florida, this **16th** day of **January**, 2014.

_____
JUDGE OF COMPENSATION CLAIMS

I HEREBY CERTIFY that a true and correct copy of the above and foregoing has been furnished via Electronic Mail to counsel for the parties this **16th** day of **January**, 2014.

_____
Judicial Assistant

STATE OF FLORIDA
DIVISION OF ADMINISTRATIVE HEARINGS
OFFICE OF THE JUDGES OF COMPENSATION CLAIMS
JACKSONVILLE DISTRICT OFFICE

Christopher Berman,
   Employee/Claimant,

vs.

                                      OJCC Case No.  11-013073RJH

Coggin Honda/Liberty Mutual Insurance,
and Liberty Mutual Insurance,                Accident date: 3/5/2011
   Employer/ Carrier/Servicing Agent.

_____
/

## ABBREVIATED ORDER GRANTING MOTION FOR ADVANCE AND RESERVING JURISDICTION

**THIS CAUSE** came before me for hearing on August 15, 2013 on the claimant's motion for advance.  John Rahaim, Esquire, appeared for the claimant.  David McCranie, Esquire, appeared for the E/C.

The claimant testified and based upon that testimony I find he has not returned to the same or similar employment as at the time of the accident and that he has sustained a substantial reduction in earnings.  I further find he has a significant need for an advance.  He has not received compensation benefits since May 2013. He is awaiting surgery which has been approved by the E/C.  He has exhausted 104 weeks of temporary benefits and the E/C is not paying him disability or impairment benefits at this time.  He has exhausted his savings, sold a car and is using his daughter's college funds to try to pay his bills.  Those funds are nearly depleted. He is in dire need of money and that need is directly related to the workplace accident and injuries.  I find the criteria for the award of an advance of $2000.00 have been met.

The claimant's motion seeks an advance of $7500.  In order to award that advance, or one in excess of $2000.00, I must address the issue of prejudice to the E/C.  In the interest of time, and to get needed funds in the hands of the claimant without delay, I am reserving jurisdiction to consider that issue further and address the claimant's entitlement to any additional advance subsequent hereto.  The E/C did not object to this reservation of jurisdiction.

It is therefore,

**ORDERED AND ADJUDGED** that the Motion for Advance is granted in part and an advance of $2000.00 is awarded. The E/C shall issue that advance within 7 days of date hereof.  Said

1

payment shall be mailed directly to the claimant. This payment shall not be considered a gratuity and in the event the claimant prevails on his claim, the E/C shall be entitled to recoup the advance against any monies owed or against any settlement reached in this claim as provided by law.  Jurisdiction is reserved to determine whether the claimant is entitled to an additional advance of up to $5500.00.

DONE AND MAILED this 15th day of August, 2013, in Jacksonville, Duval County, Florida.

Ralph J. Humphries
Judge of Compensation Claims
Division of Administrative Hearings
Office of the Judges of Compensation Claims
Jacksonville District Office
1809 Art Museum Drive, Suite 200
Jacksonville, Florida  32207-2840
(904)348-2790
www.jcc.state.fl.us

Liberty Mutual Insurance
175 Berkley Street
Boston, Massachusetts  02116
CMC555Tampa@libertymutual.com;

Liberty Mutual Insurance
175 Berkley Street
Boston, Massachusetts  02116
CMC555Tampa@libertymutual.com;

David P. Dearing, Attorney
Rahaim, Watson, Dearing & Moore
3127 Atlantic Boulevard
Jacksonville, Florida  32207
mbuckland@jaxlegalhelp.com,jrahaim@jaxlegalhelp.com

John J. Rahaim, Esquire
Rahaim, Watson and Dearing, P.A.
3127 Atlantic Blvd
Jacksonville, Florida  32207
Jrahaim@jaxlegalhelp.com,jalbano@jaxlegalhelp.com

David A. McCranie
Law Office of Amy L. Warpinski
1301 Riverplace Blvd., Suite 620
Jacksonville, Florida  32207
david.mccranie@libertymutual.com,JacksonvilleLegalMail@LibertyMutual.com

Amy L. Warpinski
Law Office Of Amy L. Warpinski
1301 Riverplace Blvd. Suite 620
Jacksonville, Florida  32207
amy.warpinski@libertymutual.com,JacksonvilleLegalMail@LibertyMutual.com

3

## St. Vincent's Spine and Brain Institute
Neurological Surgery
Arnold A. Zeal, M.D., F.A.A.N.S., F.A.C.S., F.A.H.A.
3 Shircliff Way, Suite 700
Jacksonville, FL 32204
Phone: (904) 398-2756
Fax: (904) 398-2458

## COMPULSORY MEDICAL/NEUROSURGICAL EVALUATION

**NAME:** Berman, Christopher                **DATE:** 07/27/2016

**DOB:** 04/19/53                              **SEX:** Male

**DOI:** 03/05/11

**Indication:** Re-evaluate patient with specific reference to Thoracic Spine and possible thoracic surgery.

**History:** Mr. Berman was previously evaluated by myself 9/05/12 with attention to his alleged cervical spine injury and symptoms related to an MVA of 3/5/11. At that time I stated he had significant pathology primarily involving C5-6 plus C6-7 but some of the pathology had pre-existed the trauma. In my opinion the MVA had aggravated/exacerbated his problems and surgery was indicated. Following my assessment he had at least four additional spine surgery evaluations prior to Dr. Greenwald finally being authorized to carry out a 2-segment arthroplasty 8/26/15.

Mr. Berman states that ever since the MVA of 2011 he has experienced mid-thoracic spine pain but around the time of his cervical surgery the thoracic symptoms escalated and have continued to be intense and activity limiting. He alleges that due to the severe cervical symptoms his neck posture was distorted and he believes this aggravated his thoracic pain.

Around Sept. 2015 the thoracic pain began to radiate around his mid-lower chest bilaterally in circumferential manner. He describes sharp, burning pain both directly over spine plus radiating around chest with fairly constant paresthesia in same distribution. Symptoms exacerbated by standing, sitting (especially without back support), walking, trying to sit at computer, he can't stand or walk more than 5-10 min. He obtains relief lying down but on initially lying down he senses a pulsating discomfort in low thoracic spine region. Physical therapy and especially inversion therapy did reduce his symptoms some but only 12 visits were authorized. He also

1


EXHIBIT
3

Berman, Christopher
07/27/20016
Page 2...

notices that extending his back and arching does slightly reduce his pain. Cough or sneeze produce a
sharp jabbing pain over mid-low thoracic spine. When pain intense, just inhaling is painful. He is not
working at this time and was apparently declared 100% disabled so has not worked since MVA 2011.
He describes some left pectoral area pain that a previous physician speculated might be related to
brachial plexus injury. The most recent thoracic imaging was about a year ago and he understands that
pathology was identified in region of T9-10. He denies ever experiencing thoracic pain prior to the
MVA and had been a runner and very active before the accident.

He states his cervical symptoms improved dramatically following the cervical arthroplasty. He has
little or no neck pain and excellent ROM. The ulnar transposition performed concurrently with
cervical surgery resulted in resolution of the left hand numbness and paresthesia. His only real
complaints at this time are thoracic. He states the thoracic pain was there from onset but
overshadowed by cervical symptoms plus since cervical surgery he has become much more aware of
thoracic symptoms that have progressed.

Thoracic facet injections 4 mo. ago apparently significantly alleviated his pain over at least 4 days.
Largely on this basis, Dr. Greenwald has recommended surgery at these segments.

**Pertinent Past History:**   Unchanged from prior evaluation and not relevant to current
symptoms

**Past/Current Medical History:** Unchanged from prior evaluation and not relevant to current
symptoms

**Current Medications:**  Hydrocodone prn few times a wk.
      Muscle relaxant
      Anti-nausea along with each hydrocodone.

**Family History:**  Unchanged from prior evaluation and not relevant to current symptoms

**Review of Systems:**  Unchanged from prior evaluation and not relevant to current symptoms

## EXAMINATION
**Constitutional:**
- Height 5'11".  Weight 165 pounds.  Temperature is 98
- Alert and oriented.
- Normal affect and mood.
- The patient is cooperative and readily answers all questions asked without hesitation
- He does not appear to be in significant discomfort and moves his head and neck well and readily
changes posture without visible discomfort

2

Berman, Christopher
07/27/20016
Page 3...

**Head and Neck Plus Including Eye Exam:**
- Normocephalic.
- Detailed cranial nerve exam intact including:

| | |
|---|---|
| I) | Not assessed. |
| II) | Vision intact. |
| III, IV, VI) | PERL.  Full EOMs without nystagmus. |
| V) | Facial sensation fully intact. |
| VII) | Facial movement symmetrical and intact. |
| VIII) | Hearing intact bilaterally. |
| IX, X) | Swallows OK.  Good palate movement and gag. |
| XI) | Normal trapezius and sternocleidomastoid. |
| XII) | Normal tongue movement. |

- Cervical ROM excellent in ALL directions. Slight discomfort at limits of left rotation. Well-healed left anterior incision
- Carotid pulses intact without bruit

**Chest:**
- Clear to inspection and auscultation.
- Extremely tender over about T9-10 directly over spine.
- Altered sensation in radicular fashion along mid-lower rib cage about T10 with right chest sensation significantly reduced in broad area consistent with possibly 2-3 dermatomes
- Bear-Hug produces significant mid-lower thoracic spine pain plus some circumferential radicular pain in same regions as he describes his spontaneous symptoms.

**Cardiovascular:**
- Heart rate 65 and regular.
- BP 155/87
- Heart sounds normal without murmur.

**Abdomen:**  Soft, non-tender with bowel sounds.

**Neurological Plus Including Musculoskeletal Exam:**
- Arises easily and walks well, in a normal fashion.
- Tandem gait excellent.
- Walks well on toes and heels without paresis or unsteadiness.
- Romberg's: intact.

3

Berman, Christopher
07/27/20016
Page 4...

- Motor:  No focal motor deficit in any major muscle group involving all 4 extremities

|  | Deltoids | Biceps | Triceps | Intrinsic Fingers |
|---|---|---|---|---|
| Right | 5/5 | 5/5 | 5/5 | 5/5 |
| Left | 5/5 | 5/5 | 5/5 | 5/5 |

|  | Iliopsoas | Hamstrings | Quadriceps | Ankle PF | Ankle DF | Toes |
|---|---|---|---|---|---|---|
| Right | 5/5 | 5/5 | 5/5 | 5/5 | 5/5 | 5/5 |
| Left | 5/5 | 5/5 | 5/5 | 5/5 | 5/5 | 5/5 |

- Sensation is reduced along ribs in roughly T9-11 nerve root distribution, primarily reduced on right and I questioned if left corresponding region possibly hypersensitive. Also patches of fairly dense hypesthesia along lateral right knee plus anterior-lateral area of right mid thigh. Sensation throughout entire right lower very mildly reduced compared to left.
- Coordination not assessed today.
- Reflexes in all four extremities symmetrically brisk at 2+ with plantar's flexor.

|  | Biceps | Triceps | Brachioradialis |
|---|---|---|---|
| Right | ++ | ++ | ++ |
| Left | ++ | ++ | ++ |

|  | Patellar | Ankle | Toes |
|---|---|---|---|
| Right | ++ | ++ | ⇓⇓ |
| Left | ++ | ++ | ⇓⇓ |

- Flexion at the waist not measured but appears excellent for age. Extension and lateral flexion also excellent without any lumbar pain but ROM did produce some low thoracic discomfort that seemed to improve with extension of this region.
- Straight leg raising while sitting not measured but appeared normal and over 90 degrees bilaterally without verbalization of discomfort.  Sciatic stretch maneuver negative.
- No scapular winging

## MEDICAL DECISION MAKING
Data Reviewed:

No new or recent  imaging studies available for me to personally review at this time.
I do have on my computer most if not all the imaging studies I previously reviewed in 2012 and I have again now looked at his thoracic study.
- 03/05/11, thoracic CT scan.
  - Evidence of mild chronic minimal wedge-compression of the mid to low thoracic vertebrae. At least three vertebrae involved to some degree.
  - Minimal degenerative changes.

4

Berman, Christopher
07/27/20016
Page 5...

- 03/24/11, thoracic MRI scan at Flagler Hospital.
  - Questionable mild/minimal compression (vs. anatomic variant or degenerative) of vertebral bodies T7 through T10. Radiologist opined this possibly some degree of Scheuermann's Disease and I tend to concur; that means probably developmental.

  - More recent Thoracic studies not available for me to review. BY REPORT, Thoracic MRI of 7/28/15 from Flagler Medical Center reveals developmental and degenerative changes; no notation re: comparison to prior studies

**Medical Record Review:**
Numerous medical records have been reviewed with well over 5-6 hrs. devoted to this plus another couple hrs. reviewing images and formulating this report. Only pertinent records will be discussed here.

The initial records of thoracic symptoms date back to an injury of 2007 when he was a bicyclist stuck by a motor vehicle and sustained cervical plus thoracic injury. It is my understanding he recovered and was fully active including running/jogging following 2007 injury.

E.R. Records from Flagler Hospital 3/05/11 address pain in upper thoracic region as well as elsewhere. They specifically mention mild thoracic pain, discomfort with ROM, and focal tenderness at T10-11. A thoracic CT scan was carried out through the E.R. followed by a thoracic MRI 3/24/11.

Dr. Greenwald's initial consultation of 3/21/11 refers to "some numbness in his thoracic region." He ordered the cervical plus thoracic MRI. Thoracic scan of 3/24/11 was interpreted as revealing an anomaly considered most likely developmental (Scheuermann's Dis) but other possible etiologies mentioned. On several subsequent office visits Dr. Greenwald makes mention of thoracic and/or chest wall symptoms. The question of possible brachial plexus injury was raised due to patient mentioning the "chest" symptoms. An MRI of "neck" (soft tissue) was requested to evaluate this.

Chiropractic records from Dr. David Tuchinsky commencing Dec. 2012 and extending through Jan. 2014 all document symptoms include neck plus upper back. As best I can determine both regions were treated at this facility but the records are not very detailed.

When I previously evaluated Mr. Berman 9/05/12 he complained of pain radiating into upper thoracic spine between scapulae. I did not appreciate thoracic tenderness when I examined him.

When Dr. Greenberg evaluated him 2/11/13 he documented interscapular pain but he also noted "unremarkable" exam of thoracic region. He question brachial plexus and/or shoulder pathology in addition to the cervical region.

Dr. Chahlavi examined him 6/26/14 and documented point tenderness in left chest area between intercostal spaces T3-6. He also mentioned paresthesia and chest wall dysesthesia

Berman, Christopher
07/27/20016
Page 6...

The hospital consult 8/25/15 for medical management with Dr. Jocelyn Amber Soto documents a 6 wk. history of pain radiating down to the mid back.

Dr. Greenwald discussed the "mid-thoracic" pain on 7/22/15 and at that time referred to a "3 wk." history of mid thoracic pain between scapulae like a hot poker, aggravated standing up or sitting long, wakes him at night and that patient states it has been present to some degree since 2011 MVA. It is mentioned again on a post-op visit 10/12/15. On 11/16/15 Dr. Greenwald referred him for PT and specifically Inversion table that on 1/18/16 was noted to have improved thoracic symptoms. Prior thoracic MRI findings discussed and patient referred for thoracic facet injections T9-10 ? 11 also.

These injections appear to have been performed by Dr. Henry 4/11/16 with stated 90% pain relief.

Dr. Greenwald re-evaluated 5/17/16 and documented that since facet injections alleviated pain for 4-5 days it suggests facet disease and he recommended a surgical procedure. Specifically he recommends posterior lateral fusion with interface cages at T9, T10, and possibly T11, the concept being that opening the facets and reducing foraminal stenosis at these segments will hopefully greatly improve symptoms.

I find the history Mr. Berman's provided me to be consistent with the medical records and no significant discrepancy is noted.


Discussion/Therapeutic Options:
This is a complex case with numerous issues.

Mr. Berman has documented thoracic pathology on imaging studies, likely primarily developmental but possibly to some extent aggravated by trauma(s). The symptoms described to me today are consistent with true thoracic radiculopathy. Since the facet injections did improve symptoms it does stand to reason that reducing motion and opening foramina at involved segments should hopefully result in reduced thoracic spine and radicular pain. In my opinion the proposed surgery is reasonable.

Causation and etiology of symptoms is possibly slightly controversial. He had documented thoracic injury in 2007 and apparently abnormal imaging at that time but recovered and became asymptomatic. When initially evaluated in E.R. for the 2011 MVA the medical team was sufficiently concerned re: thoracic pain to obtain thoracic CT scan and within a couple wks. Dr. Greenwald recommended a thoracic MRI scan. Also, as I documented in my record review there were numerous references to thoracic pain described as either "upper" or "mid-thoracic," often labeled  as "interscapular." To me it is probable that all these evaluations were referring to the same symptoms and although not well documented they seem to have been present relatively consistently following the 2011 MVA. I also believe that because his main symptoms were cervical that his clinicians tended to glance over the less significant thoracic pain. Now that the cervical symptoms are well controlled the thoracic pain has become more evident.

6

Berman,Christopher
07/27/20016
Page 7...

The issue of date of onset is further confusing because documents such as those of Dr. Greenwald dated 7/22/15 refer to a "3 week" history of mid back pain between scapulae. To me it appears pain may have escalated at that time but was definitely present for several years.

I have reviewed some surveillance photos and reports. He does appear to be able to complete numerous household chores including bending, lifting, and carrying. However I would not necessarily anticipate thoracic spondylosis with foraminal stenosis and facet disease to totally prevent him from doing these activities. I cannot determine how comfortable he is in performing these tasks. I also am unaware as to whether he required medication prior to these chores or not. Overall, these are not totally helpful although raise my level of curiosity and skepticism.

**Impression:**
Thoracic spondylosis with foraminal stenosis and facet arthropathy T9-10 and possibly T10-11.

**Recommendations:**
In my opinion the surgery proposed by Dr. Greenwald is reasonable.

**Summary:**
Mr. Berger has mid thoracic pain that allegedly improved substantially following facet injections. On this basis more permanent therapeutic intervention is reasonable. Based on the description of symptoms this is appropriate. I have very mixed feelings re: likelihood of his symptoms improving following proposed surgery and I am somewhat skeptical. However, the proposed procedure is innovative, less invasive and less risky than many alternative forms of fusion and probably a reasonable consideration.

There are definite questions regarding the timing of symptom onset and possible relation to injuries of 2007, 2011, vs. simply degenerative disease. There is documentation he was active and essentially asymptomatic between 2007 and 2011 so I can't directly relate symptoms to 2007 trauma. There is somewhat scant but fairly consistent evidence that he experienced thoracic symptoms following the 2011 MVA and these have persisted to some degree since then. Unfortunately, in the records the documentation of thoracic pain and its exact location are not as specific as one would desire. It is also very difficult to evaluate this gentleman since the symptoms with his pathology would be primarily subjective and it would be unusual for me as an examiner to detect objective neurological findings. The imaging is also unlikely to reveal major abnormality, especially with the question of developmental abnormality in the same spinal region. There is also no way to verify symptoms not related to 2011 MVA. In my opinion the most reasonable conclusion is that he sustained a significant thoracic injury 2011 (in addition to cervical injury) resulting in his current symptoms. The symptoms do appear to have become more intense over about the past year but they also appear to have been present to at least some degree for 5 yrs. I am not aware of any other trauma and there is evidence he did not have these symptoms prior to the 2011 MVA. Despite my skepticism and concerns, it is impossible to conclude the current symptoms are due to any etiology other than the 2011 MVA.

7

Berman, Christopher
07/27/20016
Page 8

I believe it is more likely than not that the 2011 accident is the major contributing factor to his current thoracic pain and radiculopathy.

I have not had the opportunity to review more recent thoracic imaging studies but realistically I doubt reviewing current imaging would alter my opinion or any treatment consideration or recommendation.

If imaging is available I am happy to review it.

Today Mr. Berman appears totally reasonable and intelligently discusses his symptoms and issues. He describes thoracic radiculopathy well. Although in no obvious severe discomfort during the exam with good motion, I do believe he likely experiences the discomfort he describes on at least an intermittent basis following "stress." Unfortunately, there are no definite objective abnormalities but as I stated above, such would not necessarily be expected. This contributes to the complexity of this case. Mr. Berman understands the proposed surgery might not totally (if at all) alleviate his symptoms but is anxious to have some definitive therapy. Although the proposed procedure is relatively "new" and perhaps innovative and ? unorthodox, in my opinion it is probably worth considering.

ARNOLD A. ZEAL, MD, FAANS, FACS, FAHA

8

Summary View

**Progress Notes**

Patient: Berman, Christopher
DOB: 04/19/1953   Age: 59 Y   Sex: Male
Phone: 904-325-1588
Address: 303 Augusta Circle, St Augustine-32086

Provider: Jonathan Greenberg, M.D., J.D., F.A.C.S.
Date: 02/11/2013

---

**Subjective:**

CC:
1. Neck pain.

HPI:

**New symptom(s):**

This is is for this 59-year-old right-handed male who comes for an EMA was rose to injuries sustained in a work-related motor vehicle accident.

On March 2001 and follow patient was a seat belted passenger in a vehicle that was stopped at a traffic light. The patient was leaning across the armrest did talk with the driver when the vehicle was rare ended eye pickup truck traveling at an unknown rate of speed. Because the patient was leaning to the side, his head was in the space between the seats, and his head went back between the seats. His head and snapped back and he broke B as a result of his jaws snapping shot. There may have been a possible transient loss of consciousness. On March 21, 2001, the patient saw Dr. David Greenwald of neurosurgery in St. Augustine Florida for complaints of motor and sensory symptomatology. Dr. Greenwald recommended a two-level cervical arthroplasty using the prestige system. Dr. K. OPA CZ of workers compensation denied authorization for the procedure, and Dr. A. ZEAL opined that this was an old injury. Dr. John Hawkins at Shands Hospital recommended that he have surgery. The patient had an MRI study 2 weeks ago. He says that he gets massage therapy, physical therapy, like a muscular stimulation, ultrasound, and traction. He has also had trigger point injections and facet injections. On April 7, 2011 (one month post injury), Dr. WEI performed EMG and nerve conduction studies which did not demonstrate cervical radiculopathy. On June 9, 2011, Dr. ERIN DOTY performed left upper extremity EMG and nerve conduction studies which demonstrated chronic reinnervation of the left C5 and C6 nerve roots, and the patient was told that he was "impaired".

The patient complains of constant discomfort and weakness in his left arm and hand as well as in the interscapular region and says it is right-handed to beginning to become weaker. He went to the emergency room one week ago because he was losing feeling in his left hand. The patient does note that he was involved in a bicycle versus motor vehicle accident in 2007 however was injured in the thoracic spine region rather than in the cervical spine region. He was treated by Dr. MACHADO and Dr. Kilgore of neurosurgery and neurology, respectively. He said that the injury healed up and that he was able to run 3-4 miles and swim without difficulty.

ROS:
Gen.: The patient denies any weight changes, fevers, chills, or night sweats. He does have insomnia secondary to neck pain.
Eyes negative
Ears nose and throat: The patient has had sinus infections in the past
Respiratory negative
Cardiac/circulation: The patient has hypertension secondary to pain
Gastrointestinal negative
Genitourinary negative
Musculoskeletal: The patient is status post removal of Baker cyst in the past. He complains of neck and upper back abscess intrascapular) pain and weakness and paresthesias of his left upper extremity since the motor vehicle accident (see present illness)
Neurological: The patient has had headaches since the accident
In/chest wall negative
Psychiatric: The patient has had mood changes with depression since the accident
Endocrine negative
Hematologic negative
Allergic/immunologic: The patient is at most, measles, and chickenpox in the past.
Medical History: surgical history: Removal of Baker's cyst 1963, tonsillectomy 1965, past medications: Hydrocodone, family history: Patient's parents did from "old age", a sister is living and well the patient's grandparents are deceased., social history: The patient is married and works in sales and wheezing. He does not smoke cigarettes or take drugs. He drinks approximately 4-5 glasses of bear or wine per week. His caffeine intake as moderate, and his exercise/activity level is none since the accident..



**Medications:** Tylenol #3 one tablet as directed, Mobic 7.5 MG Tablet 1 tablet as directed, Neurontin 100 MG Capsule 3 capsules as directed, Skelaxin 800 MG Tablet 1 tablet as directed, Medication List reviewed and reconciled with the patient

**Allergies:** Cat Hair.

## Objective:

**Vitals:** HR 68 /min, BP 159/94 mm Hg, Ht 73 in, Wt 176 lbs, BMI 23.22 Index.

**Examination:**
  General Examination:
   This is a well-developed, well-nourished, middle-aged white male in no acute distress but with left upper extremity discomfort.
   On musculoskeletal examination, the patient experiences left shoulder symptomatology associated with passive elevation and abduction of his shoulder.
   Examination of the cervical spine demonstrates direct tenderness at the C5-6 and C6-7 levels to palpation as well as equivocal tenderness at the C1-2 level. There is no occipital nerve, trapezius, rhomboid is point tenderness. Cervical range of motion testing demonstrates flexion to 60°, extension to 75°, lateral rotation to the right degrees, lateral rotation to the left 5° or less, and lateral flexion to the right 40° and the left less than 30°. The patient does experience paresthesias with palpation over the left axillary region but does not have any herbs point tenderness. The thoracic and lumbar spines are unremarkable.
   On neurologic examination, the patient is awake, alert, and appropriate.
    Cranial nerves: There is no facial weakness
   Gait and station is intact forward heel, toe, and regular walking
   His posture is good
   Motor function is 5/5 for the major motor groups of the right upper extremity. In the left upper extremity, there is 5 minus/5 weakness of the finger flexors, finger extensors, wrist extensors, pectoralis, pronators, supinators, and teres minor muscles.
   Sensory examination demonstrates decreased pin sensation over the C5, C6, C7 and C8 dermatomes. Light touch is within normal limits. Vibratory joint position sense of the upper extremities is preserved.
   Deep tendon reflexes are 1+ and equal sign for the biceps and 0 = for the triceps and brachioradialis. In the lower extremities the patellar is are 1+ = in the suprapatellar as, hamstrings, and Achilles are 0 =. The toes are downgoing bilaterally. There is no Hoffmann's, Colace, Babinski, or pectoralis reflex noted. There is no Tinel sign at the wrist or at the ulnar canal.

## Assessment:

**Assessment:**
  1. Brachial neuritis or radiculitis nos. - 723.4 (Primary)
  2. Brachial plexus lesions - 353.0
  3. Cervical spondylosis without myelopathy - 721.0
  4. Cervicalgia - 723.1
  5. Degeneration of cervical intervertebral disc - 722.4
  6. Injury to unspecified nerve of shoulder girdle and upper limb - 955.9
  7. Other joint derangement, not elsewhere classified, shoulder region - 718.81

The review of the knee 25th 2007 cervical MRI study demonstrated a left paracentral C5-6 disc herniation with C5-6 facet hypertrophy and ligamentum flavum hypertrophy as well as a C6-7 and a tear. The report of the March 5, 2001 CT scan of the brain was unremarkable. The report of the CT scan of the cervical spine from the same date demonstrated C5-6 and C6-7 decreased disc height as well as both dorsal and ventral osteophytes with spinal stenosis and mild to moderate C5-6 neural foraminal narrowing. The March 24, 2001 and thoracic MRI study demonstrated, by report, mild T7-T10 compression wedge deformity as. The report of the cervical MRI from the same date was the patient had C5-6 and C6-7 disc/osteophyte complexes with stenosis but no cord compression. The report of the January 9, 2012 cervical MRI study wasn't patient had C5-6 and C6-7 disc/osteophyte complexes with spinal stenosis as well as C4-5 mild disc desiccation. The report of the June 16,012 CT scan of the cervical spine demonstrated that the patient had C5-6 and C6-7 decreased disc height with disc/osteophyte complexes with minimal ventral stenosis. There was also a lateral neural foraminal narrowing noted. A March 24, 2011 MRI of the brachial plexus was reported as being negative.

The patient has sustained posttraumatic aggravation of pre-existing C5-6 and C6-7 cervical spondylosis with arthropathy with left C5 and C6 cervical radiculitis/radiculopathy seen on EMG studies in June of 2011. The earlier EMG study had been performed to see into have been able to elucidate these electrophysiologic changes which require a minimum of 3-4 weeks to present themselves. The patient also appears to have a

Summary View

mild left brachial plexus neurapraxia injury versus possible left thoracic outlet syndrome post trauma. The patient also has a possible left shoulder joint injury.

**Plan:**

1. Brachial neuritis or radiculitis nos.
I recommend the patient have C5-6 and C6-7 anterior cervical discectomies with arthroplasties versus instrumentation and fusion. Because of the size of the prestige cervical arthroplasty, the patient would need to have at least one level with a different arthroplasty construct from the prestige arthroplasty level. The alternative would be one or both levels being fused and instrumented. For informational purposes I have reviewed the various differences the procedure is an risks associated with these procedures. However, in as much as I am functioning as an EMA, I would not be the treating physician for this patient for this condition. The patient should have cervical flexion and extension AP and lateral x-rays as part of a presurgical evaluation process to determine whether he is a candidate for cervical arthroplasties at one or both levels. The patient should also have a left shoulder MRI study and be referred for orthopedic surgical evaluation with regards to his left shoulder joint symptomatology.
The claimant is not yet had at MMI and requires further evaluation and treatment as noted above. Patient's work related motor vehicle accident is the major injury because or the need for the treatments as recommended above. This includes surgery, which is medically necessary and with his detailed above. The patient's work injury is the major contributing cause for the need for the patient's surgery.
As noted above, because of the specific anatomical quadrants for the insertion of a prestige arthroplasty system, only one level could be treated using this system. A second arthroplasty system with a different design could be used for the second level where the patient could have a cervical fusion at one level. However, a prerequisite to determining whether the patient is a candidate for the prestige arthroplasty system is that he have cervical flexion and extension x-rays to determine whether there is joint motion at the C5-6 and C6-7 levels.
The patient does have pre-existing cervical spondylosis at the C5-6 and C6-7 levels, but did not have pre-existing cervical nerve root irritation prior to the accident. There is no evidence that he had asymptomatic pre-existing shoulder injury or impairment prior to the motor vehicle accident. On swelling, the patient did not have a disability rating as of March 4 of 2011. It is much as the patient was not symptomatic prior to the March 5, 2011 motor vehicle accident, he would not have an anatomic impairment rating for asymptomatic conditions, in accordance with the 1996 Florida here for permanent impairment rating schedule.
There was no need for treatment of the pre-existing asymptomatic conditions that antedated the March 5, 2011 accident.
All opinions expressed here in our within a reasonable degree of medical certainty.
There is no conflict of interest as per the conflict of interest declaration (the form and accompanying documentation from Judge Humphreys was not received from the attorney's office until after the patient had been seen).
CC: Judge Ralph Humphreys together with a copy of the signed no conflict of interest declaration form.

**Immunizations:**

**Labs:**

**Procedure Codes:** 99456 IME DISABILITY EXAMINATION

**Provider:** Jonathan Greenberg, M.D., J.D., F.A.C.S.
**Patient:** Berman, Christopher  DOB: 04/19/1953  Date: 02/11/2013

**Electronically signed by Jonathan Greenberg , MD on 08/21/2013 at 09:41 AM EDT**
**Sign off status:** Pending

## STATE OF FLORIDA
### DIVISION OF ADMINISTRATIVE HEARINGS
### OFFICE OF THE JUDGES OF COMPENSATION CLAIMS

| | | |
|---|---|---|
| **Berman, Christopher,** | ) | |
| | ) | |
| Employee/Claimant, | ) | |
| | ) | |
| **v.** | ) | **OJCC Case No.:** 11-013073RJH |
| | ) | |
| **Coggin Honda** | ) | **Assigned Judge:** Humphries |
| | ) | |
| Employer, | ) | **Accident date:** 03/05/2011 |
| | ) | |
| **and** | ) | |
| | ) | |
| **Liberty Mutual Fire Insurance Company** | ) | |
| | ) | |
| Carrier/Servicing Agent. | ) | |
| | ) | |

## RESPONSE TO PETITION FOR BENEFITS

| | |
|---|---|
| **LOST TIME CASE:**   Yes | **MEDICAL BENEFITS CASE:**   Yes |

**RESPONSE TO EACH BENEFIT REQUESTED:**

(If Denial of Benefit(s) was rescinded, include the initial indemnity start date, disability type, average weekly wage and compensation rate.)

Petition(s) 4(07/18/2012) are covered by this response.

Authorization of the C5-6 and C6-7 disk arthroplasty prescribed by Dr Greenwald on 6/28/2012 is not authorized at this time as it is no medically appropriate/necessary. No attorney's fees due at this time.

**DENIAL OF BENEFIT WAS RESCINDED ON:**

| | | |
|---|---|---|
| **CARRIER:**   LIBERTY MUTUAL | **CARRIER'S CODE:**   655 **CARRIER'S FILE NO.:**   WC555-A08161 **DATE PREPARED:**   8/3/2012 | |
| **ADJUSTER:**   CAROL SARHADDI **TELEPHONE:**   800-282-6218 | **COPY FURNISHED:** JOHN RAHAIM | |
| | AMY WARPINSKI | |

**NOTICE:** If you do not agree with the employer/carrier's action or you do not understand why you received this information, please contact your adjuster. For further assistance, please contact the Employee Assistance and Ombudsman Office at (800) 342-1741.



OJCC Form RPFB (Revised 3-1-2007)

STATE OF FLORIDA
DIVISION OF ADMINISTRATIVE HEARINGS
OFFICE OF THE JUDGES OF COMPENSATION CLAIMS
JACKSONVILLE DISTRICT OFFICE

Christopher Berman,                    )
    Employee/Claimant,                 )
                                )
vs.                                    )
                                )   OJCC Case No.  11-013073RJH
Coggin Honda/Liberty Mutual Fire Insurance )
Company,                               )   Accident date: 3/5/2011
    Employer/ Carrier/Servicing Agent.  )
                                )

PRETRIAL ORDER

The above Uniform Statewide Pretrial Stipulation and Pretrial Compliance Questionnaire e-filed on December 7 , 2012 is hereby approved and accepted.

Each party shall e-file a Trial Memorandum **two (2) business days** prior to the Final Hearing pursuant to rule 60Q-6.116(7).  If the final hearing is on a Monday this filing must be received by 5:00pm on the prior Friday.

Final Witness lists must be served on opposing parties and the court no later than thirty (30) days before the Final Hearing unless otherwise stipulated to by the parties.

Upon the motion of one or more parties, all medical reports of authorized physicians exchanged at the time of the Pretrial Conference Hearing or served on opposing counsel at least thirty (30) days before the Final Hearing shall be e-filed with the Judge no later than **two (2) business days** before the Final Hearing.  All such medical composites shall be chronologically ordered by date from the first visit to the last and **indexed.**  The parties shall provide the Judge with a single composite.  If the Final Hearing is on a Monday, this e-filing must be received by 5:00pm on the prior Friday.

The parties are encouraged but are not required to file a hard copy of depositions that are to be offered into evidence prior to the Final Hearing.

Video evidence, including but not limited to surveillance, shall be submitted to the Court no later than two (2) business days before the Final Hearing.  If the Final Hearing is on a Monday, the video evidence must be received by this office by 5:00pm on the prior Friday.

Post-hearing depositions will not be accepted.  The parties shall complete discovery prior to Final Hearing.



Unless specifically requested by the undersigned at the conclusion of the Final Hearing, written closing arguments will not be accepted.  Counsel desiring to provide written argument should take advantage of Rule 60Q-6-6.116(7).

Please be advised that all orders from this office will be served electronically.  A hard copy of orders will not be forwarded to you via U.S. Mail or otherwise.  When parties are represented by attorneys, only the attorney will receive e-service.  This office will not serve orders on represented parties.  Please be advised e-service does not entitle a party to the additional five (5) day period available when service is by U.S. Mail.

**DONE AND ELECTRONICALLY MAILED** this 10th day of December, 2012 in

Jacksonville, Duval County, Florida.

_____
Ralph J. Humphries
Judge of Compensation Claims
Division of Administrative Hearings
Office of the Judges of Compensation Claims
Jacksonville District Office
1809 Art Museum Drive, Suite 200
Jacksonville, Florida  32207-2840
(904)348-2790
www.jcc.state.fl.us

David P. Dearing, Attorney
Rahaim, Watson, Dearing & Moore
3127 Atlantic Boulevard
Jacksonville, Florida  32207
mbuckland@jaxlegalhelp.com,jrahaim@jaxlegalhelp.com

John J. Rahaim, Esquire
Rahaim, Watson and Dearing, P.A.
3127 Atlantic Blvd
Jacksonville, Florida  32207
Jrahaim@jaxlegalhelp.com,jalbano@jaxlegalhelp.com

David A. McCranie
Law Office of Amy L. Warpinski
1301 Riverplace Blvd., Suite 620
Jacksonville, Florida  32207
david.mccranie@libertymutual.com,andrielle.jenkins@libertymutual.com

Amy L. Warpinski
Law Office Of Amy L. Warpinski
1301 Riverplace Blvd. Suite 620
Jacksonville, Florida  32207
amy.warpinski@libertymutual.com,andrielle.jenkins@libertymutual.com